UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

_____
                                    )
                                    )
In re                               )
CARTER'S, INC. SECURITIES           )    Civil Action No. 1:08-CV-2940-JOF
LITIGATION                          )
                                    )
                                    )
_____ )


**MEMORANDUM IN SUPPORT OF DEFENDANT
PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS**

John A. Chandler (Georgia Bar No. 120600)
Juanita P. Kuhner (Georgia Bar No. 444648)
KING & SPALDING LLP
1180 Peachtree St., N.E.
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100
Email:  jchandler@kslaw.com
        jkuhner@kslaw.com


Diana L. Weiss (Pro Hac Vice)
KING & SPALDING LLP
1700 Pennsylvania Ave
Washington, D.C. 20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
Email:  dweiss@kslaw.com

# TABLE OF CONTENTS

I.      INTRODUCTION...................................................................1

II.     BACKGROUND ...................................................................2

  A.    Carter's Undisclosed Accommodations Arrangements and the
       Resulting Restatement ........................................................2

  B.    PwC's Role as Carter's Outside Auditor................................5

III.    ARGUMENT AND CITATION OF AUTHORITY.............................7

  A.    Plaintiff Faces a High Pleading Standard Under the Federal Rules of
       Civil Procedure, the PSLRA, and Supreme Court and Eleventh
       Circuit Precedent. ...........................................................7

  B.    Plaintiff's Claim Against PwC Must Be Dismissed Because Plaintiff
       Has Failed to Plead Facts Establishing Scienter. ......................10

      1.    Plaintiff Has Failed to Plead Facts Creating a Strong Inference That
          PwC Was Aware of the Improper Accommodations Arrangements.
          ...................................................................................11

      2.    Allegations That Former PwC Employees Worked at Carter's Are
          Insufficient to Create an Inference of Scienter. ...................14

      3.    Allegations That PwC Should Have Done Something Different
          Under GAAS and GAAP Are Insufficient to Create an Inference of
          Scienter..........................................................................18

      4.    Plaintiff's Alleged "Red Flags" Are Insufficient to Create an
          Inference of Scienter. ......................................................20

      5.    Plaintiff's Complaint, in Its Totality, Fails to Raise a Cogent and
          Compelling Inference of Scienter As to PwC...................24

IV.    CONCLUSION...................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009).........................................................................7

*Bryant v. Avado Brands, Inc.,*
187 F.3d 1271 (11th Cir. 1999) .........................................................3

*Cheney v. Cyberguard Corp.,*
No. 98-6879, 2000 WL 1140306 ................................................. 10-11

*DiLeo v. Ernst & Young,*
901 F.2d 624 (7th Cir. 1990) ...........................................................18

*Dura Pharms., Inc. v. Braudo,*
544 U.S. 336 (2005)............................................................................7

*Durham v. Bus. Mgmt. Assocs.,*
847 F.2d 1505 (11th Cir. 1988) .........................................................7

*Durham v. Whitney Info. Network, Inc.,*
No. 06-cv-00687, 2009 WL 3783375 (M.D. Fla. Nov. 10, 2009) .....................10

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
594 F.3d 783 (11th Cir. 2010) .........................................7, 10, 22, 25

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
595 F. Supp. 2d 1253 (M.D. Fla. 2009)................................................9

*Garfield v. NDC Health Corp.,*
466 F.3d 1255 (11th Cir. 2006) ................................................. Passim

*Grand Lodge v. Peters,*
550 F. Supp. 2d 1363 (M.D. Fla. 2008).................................... Passim

*Holmes v. Baker,*
166 F. Supp. 2d 1362 (S.D. Fla. 2001)....................................... 10-11

*In re Aspeon, Inc. Sec. Litig.,*
168 F. App'x 836 (9th Cir. 2006) .....................................................19

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008) ..............................................................................19

*In re Dell Sec. Litig.*,
  591 F. Supp. 2d 877 (W.D. Tex. 2008) ........................................................6, 22

*In re Doral Fin. Corp. Sec. Lit.*,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008) *aff'd sub nom.*, *W. Va. Inv. Mgmt.
  Bd. v. Doral Fin. Corp.*, 344 F. App'x. 717 (2d Cir. 2009) ..............................17

*In re Imergent Sec. Litig.*,
  No. 2:05-cv-204, 2009 WL 3731965 (D. Utah Nov. 2, 2009) ..........................21

*In re Medicis Pharm. Corp. Sec. Litig.*,
  No. 08-1821, *et al.*, 2009 WL 4755406 (D. Ariz. Dec. 2, 2009)......14, 17, 19, 23

*In re Pegasus Wireless Corp. Sec. Litig.*,
  No. 07-81113, 2009 WL 3055210 (S.D. Fla. Sept. 21, 2009)............................10

*In re Recoton Corp. Sec. Litig.*,
  358 F. Supp. 2d 1130 (M.D. Fla. 2005)............................................................10

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  351 F. Supp. 2d 334 (D. Md. 2004)..................................................................14

*In re Spear & Jackson Sec. Litig.*,
  399 F. Supp. 2d 1350 (S.D. Fla. 2005)........................................................10, 19

*In re Sunterra Corp. Sec. Litig.*,
  199 F. Supp. 2d 1308 (M.D. Fla. 2002)......................................................10, 20

*Iron Workers Local No. 25 Pension Fund v. OshKosh Corp.*,
  No. 08-c-797, 2010 WL 1287058 (E.D. Wis. Mar. 30, 2010) ......................9, 13

*Ley v. Visteon Corp.*,
  543 F. 3d 801 (6th Cir. 2008) ........................................................................9, 17

*Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*,
  No. 09-civ-3708, 2010 WL 1257567 (S.D.N.Y. Mar. 31, 2010) ........................9

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ................................................................. Passim

*Nappier v. PricewaterhouseCoopers, LLP*,
    227 F. Supp. 2d 263 (D.N.J. 2002) ................................................................21

*Public Employees' Retirement Ass'n of Co. v. Deloitte & Touche LLP*,
    551 F.3d 305 (4th Cir. 2009) .......................................................19, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ............................................................. Passim

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ............................................... 10-11

## STATUTES

15 U.S.C. § 78u-4(b) ...........................................................................8, 24

15 U.S.C. § 78u-4(b)(3)(A) ......................................................................8

## I.    INTRODUCTION

Defendant PricewaterhouseCoopers LLP ("PwC") submits this memorandum of law in support of its motion to dismiss the First Amended and Consolidated Class Action Complaint For Violations of Federal Securities Laws ("the Complaint") filed on March 15, 2010, by Lead Plaintiff Plymouth County Retirement System ("Plaintiff"). The Complaint pleads no facts that come close to supporting a strong inference that PwC acted with scienter and must be dismissed in the face of the rigorous pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Supreme Court and Eleventh Circuit precedent.

PwC is Carter's, Inc.'s ("Carter's") independent auditor. It issued opinions on Carter's fiscal year financial statements during the class period. Plaintiff's allegations against PwC arise from Carter's restatement of its financial statements for the fiscal years 2004 through 2008 to correct misstatements from a single accounting issue that gave rise to annual overstatements or understatements of net sales by no more than 0.7%.[1] Plaintiff claims that PwC violated Section 10(b) of the Securities Exchange Act of 1934 and Securities & Exchange Commission

---

[1] PwC has been specifically excluded from any claims arising from Carter's alleged failure to take a goodwill impairment related to Carter's acquisition of OshKosh Corporation ("OshKosh") in July 2005. (*See, e.g.*, Compl. ¶ 14 (excluding PwC from the definition of "OshKosh Defendants").) Therefore, this motion does not address any of the factual allegations related to the OshKosh acquisition.

("SEC") Rule 10b-5 by failing to detect the alleged fraud that caused the misstatements. But Plaintiff pleads nothing that would permit an inference that PwC was either aware of the alleged accounting misstatements or turned a blind eye to obvious fraud. Indeed, the very 10-K/A that includes the restated financial statements on which Plaintiff relies discloses that the facts resulting in the misstatements were concealed from PwC.

The PSLRA requires a Section 10(b) claim to allege facts creating a "strong inference" of scienter—an inference defined as "cogent" and "compelling." As will be demonstrated below, the Complaint fails to allege a single fact supporting such an inference. Instead, the Complaint relies on generic and speculative allegations of the type that have been rejected time and again in this Circuit as insufficient to state a federal securities fraud claim. Because Plaintiff has not pled facts supporting scienter against PwC, the Complaint must be dismissed.

## II.    BACKGROUND

### A.    Carter's Undisclosed Accommodations Arrangements and the Resulting Restatement

Carter's sells apparel exclusively for babies and young children. (01/15/2010 10-K/A, Defendants' Joint Appendix Exhibit (hereinafter "Ex.") 25.)[2]

---

[2] For the Court's convenience, the Exhibits cited by PwC are attached to the Declaration of Christopher G. Green Setting Forth Defendants' Joint Appendix filed contemporaneously with Defendant Carter's, Inc.'s Motion to Dismiss. The facts summarized in this motion are taken from the Complaint and from documents

Since going public on October 24, 2003, Carter's net sales have increased from approximately $823 million in fiscal year 2004 to approximately $1.6 billion in fiscal year 2009.  (*Id.*; 2009 10-K, Ex. 26.)

In the normal course of business, Carter's provides margin support and other allowances (collectively "Accommodations") to its wholesale customers to assist them with the costs related to inventory clearance and sales promotion.  (*See, e.g.*, Compl. ¶ 128.)  Such amounts are reflected in Carter's financial statements as reductions in net sales and are recorded based upon agreements with customers, historical trends, and annual forecasts.  (*Id*.; 01/15/2010 10-K/A at 31, Ex. 25.)  In the fourth quarter of fiscal 2009, Carter's became aware of a dispute concerning Accommodations with a single wholesale customer, and Carter's management immediately reviewed the Accommodations arrangements with respect to that customer.  (*Id.* at Explanatory Note.)  As a result of its review, Carter's management identified issues with respect to the timing of recognizing[3] the

---

referenced therein, as well as Carter's filings with the SEC.  On a motion to dismiss a securities fraud claim, courts may properly consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2509 (2007).  A company's SEC filings are among the documents a court may consider on a motion to dismiss.  *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1276 (11th Cir. 1999).

[3] "Recognition" is an accounting concept concerning the proper accounting period in which revenue or an expense should be reported.

obligation for the wholesale customer's Accommodations. (*Id.*) Carter's Audit Committee engaged outside counsel to conduct an investigation. (*Id.*) Outside counsel engaged independent forensic accountants. (*Id.*) The investigation concluded that Carter's had reported some customer Accommodations in incorrect accounting periods because members of the sales organization intentionally did not disclose the Accommodation arrangements to Carter's management or employees in charge of financial reporting. (*Id.*) The undisclosed arrangements resulted in the deferral of the recognition of Accommodations into later periods and resulted in either an overstatement or understatement of net sales depending on the affected period. (*Id.*) The investigation specifically found that the arrangements were not disclosed to PwC. (*Id.*)

As a result of the Audit Committee investigation, Carter's announced that its previously issued financial statements for certain periods from fiscal 2004 to 2009 should no longer be relied upon. (12/23/2009 8-K at 1, Ex. 37.) Carter's then restated its financial statements for fiscal years 2004 through 2008.[4] (01/15/2010 10-K/A, Ex. 25.) The cumulative, after-tax impact of the Accommodations adjustments was a 3% reduction in retained earnings in the amount of $7.5 million

---

[4] Carter's also restated certain quarterly financial statements, but PwC neither audited nor opined on these interim, unaudited financial statements. (*See, e.g.*, 01/15/2010 10-Q/A, 1Q 2009, Ex. 35; 01/15/2010 10-Q/A, 2Q 2009, Ex. 36.)

as of July 4, 2009.[5]  (12/23/2009 8-K at 2, Ex. 37.)  Moreover, even though, as

Plaintiff acknowledges, typical Accommodations result in a reduction of net sales

(Compl. ¶ 128), Carter's net sales were affected by no more than 0.7% at any given

fiscal year end between 2004 and 2008 as a result of the undisclosed

Accommodations arrangements.  (12/23/2009 8-K at 3, Ex. 37.)

### B.    PwC's Role as Carter's Outside Auditor

As Carter's outside auditor, PwC played a role distinctly different from that

of Carter's management:  Carter's management was responsible for the preparation

and presentation of Carter's financial statements in conformity with Generally

Accepted Accounting Principles ("GAAP") (SEC Reg. S-X 4-01(a)(1); PwC was

responsible for auditing those financial statements for the fiscal years at issue, *i.e.*,

2004 through 2008.[6]

---

[5] On page 53 of the Complaint, Plaintiff purports to summarize in a table the
percentage changes in retained earnings resulting from the Accommodations
adjustments as reported in the December 23, 2009, press release.  (Compl. ¶ 102.)
The allegations misstate the document to which they refer, which shows that the
percentage changes in retained earnings resulting from the Accommodations
adjustments were much lower than Plaintiff represents.  (*See* 12/23/2009 press
release at 3, Ex. 30 (showing, for example, that the percentage change in retained
earnings for 2008 was 5.9%, not the 27% claimed by Plaintiff).)  Through what
appears to be a typographical error on Plaintiff's part, the table thus overstates the
effect of the restatement on retained earnings in each period.

[6] The Complaint does not allege that PwC made any statements with respect to
2003 or Carter's quarterly financial statements.  (*See, e.g.*, Compl. ¶ 149
(acknowledging that PwC's statements were limited to fiscal year-ends 2004
through 2008).)

Plaintiff acknowledges that an auditor must conduct an audit in accordance with Generally Accepted Auditing Standards ("GAAS").  (Compl. ¶¶ 154–57.) Under GAAS, an auditor does not, and as a practical matter, cannot, obtain absolute assurance that a company's financial statements are not materially misstated.  (AU § 110.02.)[7]  Rather, the auditor's opinion is based upon, among other things, information and representations provided by the company, the testing of some (but by no means all) of the company's accounts,[8] and the auditor's professional judgment, and can only provide reasonable assurance about the absence of material misstatements.  Because of the limitations inherent in an audit, GAAS acknowledges that even a properly planned and performed audit may not detect material misstatements.  (AU § 230.10; AU § 316.12.)  *See also In re Dell Sec. Litig*., 591 F. Supp. 2d 877, 903 (W.D. Tex. 2008) (citing AU § 230.12 as establishing that "even a properly planned . . . audit may not detect a material misstatement").  Consistent with the above audit literature, courts have repeatedly recognized that a restatement of financial statements does not mean that the audit

---

[7] "AU" sections refer to Statements on Auditing Standards adopted by the Public Company Accounting Oversight Board ("PCAOB"), which is responsible for setting Generally Accepted Auditing Standards ("GAAS").  Plaintiff cites various "AU" sections throughout its Complaint.  (*See, e.g.*, Compl. ¶¶ 139, 140.)

[8] PwC's audit reports expressly state that an audit includes examining "on a test basis" evidence supporting the amounts in the financial statements.  (Compl. ¶¶ 150-53.)

was conducted improperly, much less that the auditor engaged in fraud.  (*See* page

19 *infra.*)

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Plaintiff Faces a High Pleading Standard Under the Federal Rules of Civil Procedure, the PSLRA, and Supreme Court and Eleventh Circuit Precedent.

To state a claim under Section 10(b) of the Securities Exchange Act and

SEC Rule 10b-5, a plaintiff must allege:  (1) a material misstatement or omission;

(2) made with scienter; (3) in connection with the purchase or sale of a security; (4)

reliance on the misstatement or omission; (5) economic loss; and (6) a causal

connection between the misrepresentation or omission and the loss.  *Dura*

*Pharms., Inc. v. Braudo,* 544 U.S. 336, 341-42 (2005); *Edward J. Goodman Life*

*Income Trust v. Jabil Circuit, Inc*., 594 F.3d 783, 789 (11th Cir. 2010).  In addition

to the requirement that Plaintiff state a claim "plausible on its face" to survive a

motion to dismiss, *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), Section 10(b)

claims are subject to two even more stringent pleading requirements:  those set

forth in Federal Rule of Civil Procedure 9(b), which requires fraud to be pled with

particularity, and those set forth in the PSLRA, which, among other things,

requires a plaintiff to allege facts creating a "strong inference" of scienter.

Rule 9(b)'s particularity requirement is meant to alert "defendants to the

precise misconduct with which they are charged."  *Durham v. Bus. Mgmt. Assocs.*,

847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotations omitted). The PSLRA, which was enacted in 1995 to redress abusive securities litigation, contains further pleading requirements designed to deter litigants from bringing "strike suits" in securities matters.[9] Specifically, the PSLRA requires a plaintiff to allege with particularity facts giving rise to a "strong inference" that each defendant acted with the required state of mind. 15 U.S.C. § 78u-4(b). Where a plaintiff fails to meet these pleading requirements, "the court *shall*, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

The Supreme Court has since announced the test for pleading a strong inference of scienter under the PSLRA. After acknowledging that "[t]he strong inference standard unequivocally raise[d] the bar for pleading scienter," the Court stated:

> [T]he inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive…only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2509, 2510 (2007). The inquiry is inherently comparative because courts "must take into account plausible opposing inferences." *Id.* at 2509. Thus, *Tellabs* mandates that if the

---

[9] *See* H.R. Conf. Rep. No. 104-369, at *31, *reprinted in* 1995 U.S.C.C.A.N. 730, 731 (1995) (PSLRA was enacted to curb the practice of "targeting . . . deep pocket defendants, including accountants . . . without regard to their actual culpability.")

Court concludes that the inference of nonfraudulent intent is only slightly stronger than the inference of fraudulent intent, the Complaint must be dismissed. *Tellabs*, 127 S. Ct. at 2510.

When the defendant is an outside auditor like PwC, the PSLRA's heightened pleading requirements are especially difficult to meet. *See, e.g., Ley v. Visteon Corp.*, 543 F. 3d 801, 814 (6th Cir. 2008) (noting that "the meaning of recklessness in securities fraud cases is especially stringent when the claim is brought against an outside auditor"); *Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*, No. 09-civ-3708, 2010 WL 1257567, at *5 (S.D.N.Y. Mar. 31, 2010) ("The standard for pleading auditor scienter is demanding."). As one court recently noted, asserting a claim against a third-party auditor "is not a happy place to be under the PSLRA." *Iron Workers Local No. 25 Pension Fund v. OshKosh Corp.*, No. 08-c-797, 2010 WL 1287058, at *23 (E.D. Wis. Mar. 30, 2010). This is because a plaintiff "must offer specific factual allegations that are sufficient to support the strong inference that the audit was so deficient that it amounted to no audit at all." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1283 (M.D. Fla. 2009) (quoting *Grand Lodge v. Peters*, 550 F. Supp. 2d 1363, 1372 (M.D. Fla. 2008)). "[M]erely alleging scienter in general, conclusory terms does not meet the particularity requirement." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006).

The Eleventh Circuit, along with district courts within the Eleventh Circuit, routinely have dismissed claims against auditors for failure to satisfy these stringent standards. *See id.* (affirming dismissal with prejudice of securities fraud claim against auditor for failure to state a claim).[10] This Court should do the same.

### B.    Plaintiff's Claim Against PwC Must Be Dismissed Because Plaintiff Has Failed to Plead Facts Establishing Scienter.

Scienter in the securities context requires the intent to deceive, manipulate or defraud, which can be shown by proof of "severe recklessness" on the part of the defendant. *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 790-91 (11th Cir. 2010); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008). The Eleventh Circuit defines "severe recklessness" to include only those "highly unreasonable omissions and misrepresentations . . . that present a danger of misleading buyers or sellers which is either *known* to the defendant or is *so obvious the defendant must have been aware of it*." *Id.* (emphasis added);

---

[10] *See also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001) (affirming dismissal with prejudice of securities fraud claim against auditor for failure to state a claim); *Durham v. Whitney Info. Network, Inc.*, No. 06-cv-00687, 2009 WL 3783375 (M.D. Fla. Nov. 10, 2009) (dismissing claim against auditor); *In re Pegasus Wireless Corp. Sec. Litig.*, No. 07-81113, 2009 WL 3055210 (S.D. Fla. Sept. 21, 2009) (same); *Jabil Circuit,* 585 F. Supp. 2d at 1287 (same); *Grand Lodge*, 550 F. Supp. 2d at 1373 (same); *Faro Tech.*, 534 F. Supp. 2d at 1267 (same); *In re Recoton Corp. Sec. Litig.*, 358 F. Supp. 2d 1130, 1147 (M.D. Fla. 2005) (same); *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1364 (S.D. Fla. 2005) (same); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1338 (M.D. Fla. 2002) (same); *Holmes v. Baker*, 166 F. Supp. 2d 1362 (S.D. Fla. 2001) (same); *Cheney v. Cyberguard Corp.*, No. 98-6879, 2000 WL 1140306, at **12-13 (S.D. Fla. July 31, 2000) (same).

*Garfield*, 466 F.3d at 1264.  Thus, at a minimum, Plaintiff must plead facts showing that PwC either knew about the undisclosed Accommodations arrangements or the undisclosed Accommodations arrangements were so obvious that PwC must have known about them.  Plaintiff does not even come close.

    1.    *Plaintiff Has Failed to Plead Facts Creating A Strong Inference That PwC Was Aware of the Improper Accommodations Arrangements.*

The most significant defect in the Complaint is Plaintiff's failure to allege any facts demonstrating that PwC had any knowledge of, or was an active participant in, the alleged fraud.  Courts in this circuit place a premium on an auditor's actual awareness of the alleged fraud and routinely dismiss claims where a plaintiff fails to plead such facts.[11]  Plaintiff has pled no such facts with respect to the alleged Accommodations fraud at Carter's.

Even documents Plaintiff relies upon weigh against the inference of scienter on PwC's part.  For example, as set forth in Carter's press release issued on December 23, 2009, and again in Carter's 10-K/A filed on January 15, 2010, the

[11] *See Garfield*, 466 F.3d at 1269 (affirming dismissal where plaintiff failed to allege any facts of auditor's actual awareness of the fraud); *Ziemba*, 256 F.3d at 1210 (affirming dismissal of complaint where plaintiff failed to allege any facts suggesting actual awareness by auditor of any fraud and failed to allege any tip-offs, letters, or conversations raising inferences that auditor knew of fraud); *Grand Lodge*, 550 F. Supp. 2d at 1373 (dismissing complaint absent allegations that auditor was "active participant in the fraud"); *Holmes*, 166 F. Supp. 2d at 1380 (noting that there were "no allegations of actual awareness of accounting fraud" when dismissing complaint against auditor); *Cheney*, 2000 WL 1140306, at *12 (placing particular emphasis on lack of evidence that auditor was aware of falsity of original statement when dismissing the complaint).

11

Audit Committee investigation concluded that the improper Accommodations
arrangements were never communicated to PwC:

> The Audit Committee [has completed its] investigation . . . with the
> assistance of outside counsel and forensic accountants engaged by
> outside counsel, and has concluded that the Company reported various
> customer accommodations in incorrect fiscal periods.    The
> Investigation uncovered irregularities involving members of the sales
> organization intentionally not disclosing accommodation
> arrangements with customers to the Company's finance organization
> and intentionally providing inaccurate documentation and
> explanations regarding accommodations to the finance organization.
> *Consequently, such arrangements were not communicated to [PwC].*

(12/23/2009 press release at 1 (emphasis added), Ex. 30; 01/15/2010 10-K/A at
Explanatory Note (emphasis added), Ex. 25.)  Notably, when quoting the
December 23 press release and Carter's 10-K/A, the Complaint *omits* the portion
stating that the Accommodations arrangements resulting in the misstatements were
never communicated to PwC.  (*See, e.g.*, Compl. ¶¶ 102, 107, 108, 112, 115, 123-
24, 134, 178, 185-86.)

The plausible inference from the investigation is that PwC had no
knowledge of the improper Accommodations arrangements because such
Accommodations were never communicated to it.  This inference finds further
support in the absence of any allegations of any direct communication between
PwC and anyone at Carter's that could reasonably be interpreted as relating to the
improper Accommodations arrangements.  *Mizzaro*, 544 F.3d at 1251 ("The

12

absence of these types of allegations weighs strongly against the inference that the named defendants . . . orchestrated the fraud.").

Further highlighting the weaknesses of Plaintiff's scienter allegations about PwC is the fact that Plaintiff could not muster even a single motive on the part of PwC to engage in the fraud. While motive is not dispositive, it remains relevant to the scienter analysis, and the absence of any viable motive on the part of PwC to engage in fraud weighs strongly against a finding that it had the requisite scienter. *See Iron Workers*, 2010 WL 1287858, at *23 ("Without any plausible motive alleged, it is difficult to draw any inference of intent to deceive.").

The failure of Plaintiff to plead that PwC was aware of the alleged fraud, the Audit Committee investigation's conclusion that the Accommodations arrangements were never communicated to PwC, the absence of any direct communications suggesting PwC's encouragement of or participation in the fraud, and the complete absence of any cognizable motive on the part of PwC demonstrate that Plaintiff has failed to allege sufficient facts to create any inference of scienter, much less the strong one required by the PSLRA. To the contrary, these facts support the opposite inference: that PwC had no scienter.

Having no facts tying PwC to the alleged fraud, Plaintiff resorts to alleging that: (1) PwC failed to maintain independence because former PwC employees worked at Carter's; (2) PwC should have done something different under GAAS

13

and GAAP; and (3) "red flags" existed that should have placed PwC on notice of the alleged wrongdoing. As discussed below, courts repeatedly have rejected these allegations as bases for scienter, and when viewed individually and collectively, Plaintiff's allegations are inadequate as a matter of law.

> 2.   *Allegations That Former PwC Employees Worked at Carter's Are Insufficient to Create an Inference of Scienter.*

Plaintiff hangs its hat on the fact that Carter's employees Mike Casey and Andrew North once worked at PwC, alleging that this shows that PwC lacked the independence required of an outside auditor under GAAS. (Compl. ¶¶ 138, 139.) First, alleging GAAS violations is insufficient to plead scienter. *See Garfield*, 466 F.3d at 1270; *see also* page 18 *infra*. Moreover, Plaintiff identifies no provision of GAAS (because there is none) that prevents an auditor from conducting an independent audit of a company based solely on the fact that former accounting firm employees work there. Not surprisingly then, courts have rejected similar allegations as insufficient to create even a weak inference of scienter. *See In re Medicis Pharm. Corp. Sec. Litig.*, No. 08-1821, *et al.*, 2009 WL 4755406, at *18 (D. Ariz. Dec. 2, 2009) (rejecting allegation that auditor was biased toward company because of executive's former status as employee of auditor); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 390-91 (D. Md. 2004) (dismissing securities claim despite allegation that auditor's "extensive

relationship with [its client] compromised" the auditor's "ability to aggressively seek the truth from company management").

Moreover, Plaintiff's allegations that PwC's relationship with Casey and North impacted its audit work are based on nothing more than conclusory and speculative statements from confidential witnesses ("CW1" and "CW2"). For example, CW1 opines that PwC would "allow certain things to slide." (Compl. ¶¶ 144, 172, 179.) The Complaint, however, does not specify what "things" PwC "let slide," whether these "things" even related to Accommodations, in what context PwC allowed things to slide, or how such "things" would have affected PwC's opinions, all of which would be required to demonstrate that such a statement was sufficiently reliable, let alone relevant. *Garfield*, 466 F.3d at 1265. CW1 also states that he "occasionally" attended clearance calls in which PwC auditors and finance executives were present (Compl. ¶ 142), but these allegations say nothing about when these clearance calls occurred, who from PwC was present, or what issues were discussed, all of which would be required to support an inference of scienter. *Id.* at 1265.[12] Under *Tellabs*, this sort of vagueness and ambiguity cuts *against* any inference of scienter. *Mizzaro*, 544 F.3d at 1238-39.

_____

[12] Undermining CW1's testimony even further is the fact that CW1 was let go from his position at Carter's. (Compl. ¶ 70 ("Mike [Casey] had purposely gotten rid of people that jeopardized himself. . . . He started with the head of sales [Joe Elles] and *then they got rid of me*. . . .") (emphasis added).) *See Higginbotham*, 495 F.3d

Along these same lines, CW2 asserts that in her opinion, based solely on her desk's proximity to the head of Carter's internal audit, PwC was "probably not as hard on [Carter's management] as they would [have been] with other clients . . . probably because . . . they're former employees." (Compl. ¶¶ 145, 146.) The Complaint, however, provides no basis whatsoever for CW2 to make such a comparison. First, having a workspace in close proximity to Carter's head of internal audit hardly seems the type of "foundation or basis of . . . knowledge" a court would expect a reliable confidential witness to have. *Mizzaro*, 544 F.3d at 1240. Second, the Complaint offers no details about CW2's expertise to draw any sort of inference from such a comparison. Third, CW2's statement is nothing more than her own speculation that PwC was "*probably* not as hard on" Carter's management "because *probably* . . . they're former employees," and is not even tied to the Accommodations issue. It would be absurd to infer, based on such speculative allegations, that CW2 was in any position to critique PwC's audit work at Carter's, much less make informed comparisons about how PwC conducted audits with respect to its many other clients. CW2's opinions are exactly the type of vague assertions courts have rejected time and again.

---

at 757 ("It is hard to see how information from anonymous sources could be deemed compelling . . . . *Perhaps these confidential sources have axes to grind.* Perhaps they are lying.") (emphasis added).

16

When a complaint relies on confidential witnesses, as Plaintiff's does here, the weight to be afforded the confidential witnesses' statements depends on the particularity of the statements and whether the complaint fully describes the foundation or basis of the confidential witnesses' knowledge. *Mizzarro*, 544 F.3d at 1240 (noting that courts are often "skeptical of confidential sources cited in securities fraud complaints"). Allegations based on confidential witness statements that are vague or conclusory, such as those set forth above, cannot, as a matter of law, raise an inference of scienter. *See, e.g.*, *Garfield*, 466 F.3d at 1265 (rejecting statement from confidential witness that issues were discussed in meeting with auditor as lacking requisite detail where statement "failed to allege what was said at the meeting, to whom it was said, or in what context").[13]

Simply put, Plaintiff attempts to infer something nefarious from something innocuous, and more importantly, from something specifically permitted under the professional standards. The only inference to be drawn from Plaintiff's allegations

---

[13] *See also Ley v. Visteon Corp.*, 543 F.3d 801, 817 (6th Cir. 2008) (without context of who knew about alleged improprieties and "what, when, where and how they knew" it, confidential witness allegations could not raise inference of scienter); *Medicis Pharm.*, 2009 WL 4755406, at *12 (rejecting statements of confidential witnesses that, among other things, failed to show that witnesses had personal knowledge of defendant's improper state of mind); *In re Doral Fin. Corp. Sec. Lit.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (rejecting as too vague statement from confidential witness regarding conversations he had with company's auditors, where allegations contained no time frame, no indication of where within auditor's hierarchy representatives fell, and no information regarding how extensively or in what manner issues were discussed) *aff'd sub nom.*, *W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x. 717 (2d Cir. 2009).

is that Casey and North were friendly with PwC's engagement team, an inference that, even if true, could hardly constitute a sufficient motive for PwC professionals to sacrifice their professional reputations.  *See DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("An accountant's greatest asset is its reputation for honesty, followed closely by its reputation for careful work.").[14]

### 3.    *Allegations That PwC Should Have Done Something Different Under GAAS and GAAP Are Insufficient to Create an Inference of Scienter.*

Plaintiff tries to bolster its scienter allegations by alleging GAAS and GAAP violations.  (Compl. ¶¶ 160-65, 190.)  Courts, however, have routinely rejected the notion that allegations of GAAS and GAAP violations alone create an inference of scienter.  Allegations of GAAS and GAAP violations suggest at best negligence, not the scienter required to state a fraud claim.  *See, e.g.*, *Garfield*, 466 F.3d at 1270 (allegation that auditor violated GAAS was "merely an allegation of negligence," not fraud); *Grand Lodge*, 550 F. Supp. 2d at 1372 ("Simply articulating violations of GAAS and GAAP alone is insufficient to satisfy the strong inference of scienter on the part of [an auditor].").

Stated somewhat differently, a "Plaintiff cannot plead scienter by merely alleging that later-disclosed information would have been discovered earlier if the

---

[14] For these same reasons, Casey and North's status as former employees of PwC also fails to rise to the level of a "red flag."  (Compl. ¶ 177.)  *See infra*.

auditor had not violated GAAS." *Spear & Jackson*, 399 F. Supp. 2d at 1363 (allegations that auditor should have taken certain steps, which, had auditor done so, would have uncovered fraud, are insufficient to establish scienter) (internal quotations omitted); *see also Public Employees' Retirement Ass'n of Co. v. Deloitte & Touche LLP*, 551 F.3d 305, 314 (4th Cir. 2009) ("In order to establish a strong inference of scienter, plaintiffs must do more than merely demonstrate that defendants should or could have done more."). Without more, "the opposing inference of nonfraudulent intent—that these were mistakes by accounting personnel undetected because of faulty accounting controls—is simply more compelling." *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008).

Nor does the fact that Carter's financial statements were restated create a basis for a claim against PwC. (*See* Compl. ¶ 159.) Absent allegations of fact demonstrating PwC's knowledge that the financial statements were materially misstated when it issued its audit reports, this allegation is at best a conclusory allegation of negligence. *See, e.g.*, *In re Aspeon, Inc. Sec. Litig.*, 168 F. App'x 836, 839 (9th Cir. 2006) ("The issuance of restatements is not an admission that the Defendants knew the reports were false when made."); *Medicis Pharm.*, 2009 WL 4755406, at *5 ("[A]s a general rule, a restatement of financial data due to an accounting error, without more, is insufficient to create a strong inference of scienter.") (citations omitted).

### 4.    Plaintiff's Alleged "Red Flags" Are Insufficient to Create an Inference of Scienter.

Plaintiff further attempts to plead scienter by alleging that PwC recklessly ignored certain alleged "red flags."  As a threshold matter, a "red flag" cannot suggest scienter unless the auditor was aware of it.  Thus, the Eleventh Circuit has defined "red flags" as "those facts *which come to the attention of an auditor* which would place a reasonable auditor *on notice* that the audited company was engaged in wrongdoing to the detriment of its investors.'"  *Garfield*, 466 F.3d at 1268 (emphasis added) (quoting *Sunterra*, 199 F. Supp. 2d at 1333).  The Complaint, however, does not even try to allege a factual basis for concluding that many of the alleged "red flags" even came to the attention of PwC.[15]  Plaintiff's own allegations confirm the opposite—that many of the alleged "red flags" did *not* come to PwC's attention.  (*See, e.g*., Compl. ¶ 164 (PwC "failed to catch" misstatements in accounts receivable); ¶ 178 (PwC "failed to uncover" overstatement in retained earnings); ¶ 187 (PwC "fail[ed] to identify" material weaknesses in internal controls).)  Because PwC allegedly failed to detect these

---

[15] The only two "red flags" Plaintiff alleges that actually came to PwC's attention are (1) Casey and North's status as former PwC employees, which, as discussed above, is insufficient to create an inference of scienter; and (2) PwC's alleged receipt of certain Carter's prepared quarterly "flux balance sheets" as part of its audit, which, as will be discussed below, was insufficient to have placed PwC on notice of the alleged fraud.  Indeed, both of these facts are entirely benign.

purported "red flags," they could not have come to PwC's attention, and thus, fail to satisfy even the basic definition of what constitutes a "red flag."

Moreover, none of the alleged "red flags" would have been sufficient to place PwC on notice that Carter's was engaged in any wrongdoing. *Nappier v. PricewaterhouseCoopers, LLP*, 227 F. Supp. 2d 263, 278 (D.N.J. 2002) ("red flags" need to be much more than "mere warning signs"). For example, Plaintiff alleges that material overstatements in accounts receivable and retained earnings were "red flags" that should have placed PwC on notice of the fraud. (Compl. ¶¶ 174-76, 178.) On their face, these alleged "red flags" simply rehash alleged GAAP violations, and cannot raise an inference of scienter. *See Garfield*, 466 F.3d at 1268 ("purported red flags" that "simply re-hash the alleged GAAP violation" do not create an inference of scienter).[16]

---

[16] At their core, however, these alleged "red flags" are simply another way of alleging that the magnitude (which is slight) and duration of the fraud should have put PwC on notice of the alleged wrongdoing. Such allegations are insufficient to raise an inference of scienter. *See In re Imergent Sec. Litig.*, No. 2:05-cv-204, 2009 WL 3731965, at *10 (D. Utah Nov. 2, 2009) ("[A]llowing an inference of scienter based solely on the magnitude of a restatement would eviscerate the principle that accounting errors [alone] cannot justify a finding of scienter.") (citations omitted). Moreover, these alleged "red flags" are misleading. As Plaintiff acknowledges, Carter's Accommodations adjustments had a direct effect on *net sales*, which in turn would have affected other items on the balance sheet and the statement of operations. (Compl. ¶ 76.) Net sales, however, were adjusted by no more than 0.7% at any given year-end between 2004 and 2008. (01/15/2010 10-K/A, Ex. 25.) Such adjustments were not "so obvious" that PwC "must have been aware" of them at the time. Plaintiff's pleading strategy of picking the metric that will yield the highest percentage values was rejected by the

Likewise, Plaintiff's allegations of internal control weaknesses as "red flags" are insufficient to create an inference of scienter.  (Compl. ¶¶ 182–89.)  Internal controls are processes designed by management to provide reasonable assurance that the company's financial statements are not materially misstated.  (AU § 319.06.)  The existence of internal control weaknesses does not mean that an accounting misstatement *in fact* occurred, and courts have consistently rejected them as creating a strong inference of scienter.  *Dell*, 591 F. Supp. 2d at 902 ("[C]ourts have recognized an auditor's failure to detect weaknesses in a company's internal controls alone is insufficient to determine the auditor acted with scienter, even when a restatement later acknowledges deficiencies."); *see Grand Lodge*, 550 F. Supp. 2d at 1373 ("That [auditor] should have been suspicious of [corporation's] lack of internal controls does not render the audit so fraught with recklessness that a jury could infer intent to defraud.").[17]

---

Eleventh Circuit earlier this year as adding nothing to the scienter analysis, and should be rejected by this Court as well.  *See Jabil Circuit,* 594 F.3d at 792 ("This pleading strategy—picking the metric that will yield the highest percentage values—adds nothing to the inference of scienter that the shareholders attempt to create.").

[17] Plaintiff's allegations of the presence of risk factors, although not explicitly alleged as "red flags," are similar.  (Compl. ¶¶ 166-72.)  The presence of risk factors does not mean that fraud *in actuality* occurred.  To the contrary, many of the factors alleged by Plaintiff are generic to almost any public company, and thus do not give rise to an inference of scienter.  *See Dell*, 591 F. Supp. 2d at 904-05 (rejecting as probative of scienter similar listing of risk factors, including concerns

Finally, Plaintiff alleges that PwC was given certain quarterly flux balance sheets as part of its audit that, if reviewed rigorously by PwC, would have placed PwC on notice of the alleged fraud. This alleged "red flag" also is an insufficient basis from which the Court can infer scienter. Again, Plaintiff relies on the statements of CW1 to allege that the flux balance sheets demonstrated that certain Accommodations reserve balances were "up" on one account and "down" on another account, which demonstrated in his opinion that "they were moving the dollars around between accounts." (Compl. ¶ 180.) Notably, "moving dollars around between accounts" is not even the type of fraud alleged to have occurred at Carter's, *i.e.*, deferring Accommodations into later fiscal periods. Thus, it is impossible to infer whether CW1's analysis of the flux statements is even relevant to the Accommodations issue at all.

Moreover, Plaintiff offers no clue as to which quarterly flux balance sheets would have placed PwC on notice of the alleged fraud, which accounts would have been affected, or whether those accounts would have been significant to PwC's audit. *See Garfield*, 466 F.3d at 1265. Nor does the Complaint allege any fact demonstrating that CW1 was an accountant or auditor so that he would have had the requisite expertise to understand the reasons for the alleged changes between accounts from an auditor's perspective. *See Medicis Pharm.*, 2009 WL 4755406,

---

about profitability and competition, excessive pressure for management to meet expectations, and management override of controls).

at *12 (rejecting confidential witness testimony where confidential witness was not alleged to have had requisite accounting expertise to understand technical issue). Merely alleging that had PwC rigorously reviewed the flux balance sheets that Carter's had prepared it would have uncovered the alleged fraud, is insufficient to establish scienter. *Public Employees' Retirement*, 551 F.3d at 314 ("[P]laintiffs must do more than merely demonstrate that defendants should or could have done more.").

> 5. *Plaintiff's Complaint, in Its Totality, Fails to Raise a Cogent and Compelling Inference of Scienter as to PwC.*

As demonstrated above, Plaintiff's limited factual allegations fail to raise any inference of PwC's scienter, let alone the "strong inference" of "highly unreasonable omissions or misrepresentations" required to survive a motion to dismiss. 15 U.S.C. § 78u-4(b); *Mizzaro*, 544 F.3d at 1238. Under *Tellabs*, the Court must evaluate the Complaint "holistically" to determine whether the alleged facts, taken together, give rise to a strong inference of scienter." *Tellabs*, 127 S. Ct. at 2504-05. A reviewing court must ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 2511. If not, the case must be dismissed. As discussed above, each allegation in Plaintiff's theory has been rejected repeatedly by courts, and the theory becomes no stronger when

viewed holistically. *See Jabil Circuit, Inc.*, 594 F.3d at 793 ("we simply have no substantial allegations to aggregate").

Moreover, at least two non-culpable inferences are far more plausible: (1) PwC properly conducted its audits in accordance with GAAS, but failed to detect the misstatements in Carter's financial statements because, as Carter's investigation found, the facts resulting in the misstatements were concealed from PwC; or (2) at worst, PwC was negligent in failing to detect the misstatements in Carter's financial statements. Because these nonculpable inferences outweigh any inference of scienter Plaintiff hopes to draw from the Complaint, Plaintiff's claim against PwC must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, PwC respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 30th day of April, 2010.

/s/ John A. Chandler
John A. Chandler (Georgia Bar No. 120600)
Juanita P. Kuhner (Georgia Bar No. 444648)
KING & SPALDING LLP
1180 Peachtree St., N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email:  jchandler@kslaw.com
        jkuhner@kslaw.com

25

Diana L. Weiss (Pro Hac Vice)
KING & SPALDING LLP
1700 Pennsylvania Ave
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dweiss@kslaw.com

Attorneys for PricewaterhouseCoopers, LLP

Of counsel:

Margaret M. Enloe
PricewaterhouseCoopers, LLP
300 Madison Ave.
New York, New York 10017

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing has been prepared using Times New

Roman, 14 point type, which is one of the font and print selections approved by the

Court in Local Rule 5.1C.

/s/ John A. Chandler
John A. Chandler (Georgia Bar No. 120600)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this day I electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF DEFENDANT**

**PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS** with the

Clerk of the Court using the CM/ECF system, which will automatically send email

notification of such filing to the following attorneys of record:

Alan I. Ellman
aellman@labaton.com
electroniccasefiling@labaton.com

Christopher G. Green
christopher.green@ropesgray.com
Courtalert@ropesgray.com

Christopher J. Keller
ckeller@labaton.com
anguyen@labaton.com
electroniccasefiling@labaton.com

David James Worley
dworley@pageperry.com

James M. Evangelista
jevangelista@pageperry.com

Jonathan Gardner
jgardner@labaton.com

Katherine V. Hernacki
katherine.hernacki@bryancave.com
b.lyle@bryancave.com

Lisa T. Millican
lisa.millican@lawofficePC.com

Michael Goldberg
info@glancylaw.com
dmacdiarmid@glancylaw.com
rprongay@glancylaw.com

Patrice Russell Walker
pwalker@phrd.com

Randall W. Bodner
RBodner@ropesgray.com
courtalert@ropesgray.com

Robert Matthew Martin
mattmartin@paulhastings.com
rhondakoelzer@paulhastings.com

Russell L. Lippman
russell.lippman@ropesgray.com
Courtalert@ropesgray.com
william.dunn@ropesgray.com

Walter E. Jospin
walterjospin@paulhastings.com

William Scott Sorrels
ssorrels@pogolaw.com

William Woodhull Stone
wstone@holzerlaw.com

I further certify that a copy of the **MEMORANDUM IN SUPPORT OF**

**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO**

**DISMISS** was served via U.S. mail addressed to the following counsel of record:


Donald J. Enright
Finkelstein Thompson & Loughran
1050 30th Street, NW
Duvall Foundry
Washington,  DC 20007

Lionel Z. Glancy
Glancy Binkow & Goldberg, LLP
Suite 311
1801 Avenue of the Stars
Los Angeles,  CA 90067


This 30th day of April, 2010.

                              /s/ John A. Chandler
                              John A. Chandler
                              Ga. Bar No. 120600

                              KING & SPALDING LLP
                              1180 Peachtree Street, N.E.
                              Atlanta, GA  30309
                              (404) 572-4600
                              (404) 572-5140 (fax)
                              jchandler@kslaw.com