# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IN RE CARTER'S INC.                )
SECURITIES LITIGATION              )          CIVIL ACTION FILE
                                   )          NO. 1:08-CV-2940-JOF
                                   )
_____)

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE PLAINTIFFS' FIRST AMENDED AND <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

R. Matthew Martin
Georgia Bar No. 473450
*mattmartin@paulhastings.com*
Candace V. Wilson
Georgia Bar No. 118221
*candacewilson@paulhastings.com*
Emily L. Shoemaker
Georgia Bar No. 558138
*emilyshoemaker@paulhastings.com*
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E., Suite 2400
Atlanta, Georgia 30308
Tel:  (404) 815-2400
Fax:  (404) 815-24-24

Attorneys for Frederick J. Rowan, II,
Michael D. Casey, Andrew North and
Charles E. Whetzel, Jr.

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF THE CASE ........................................................................1

II.   ARGUMENT AND CITATION TO LAW ..................................................3

    A.    Legal Standard for Motions to Dismiss ..............................................3

    B.    The "OshKosh Fraud" Allegations ......................................................6

        1.    Plaintiffs' OshKosh Claims Are Barred by The Safe
            Harbor of the PSLRA ................................................................6

        2.    The Complaint Does Not Establish a Strong Inference of
            Scienter with Regard to OshKosh Allegations .........................9

            a.    The Complaint Contains No Scienter Allegations
                With Respect to Whetzel ................................................9

            b.    The Individual OshKosh Defendants' Stock Sales
                Do Not Raise a Strong Inference of Scienter ...............10

            c.    Confidential Witness Testimony Fails to Establish
                Scienter .........................................................................11

        3.    OshKosh Claims Fail Because Plaintiffs Failed To Allege
            Loss Causation .......................................................................12

    C.    The "Accommodations Fraud" Allegations ......................................13

        1.    Plaintiffs Lack Standing to Bring the "Accommodations
            Fraud" Claims ........................................................................13

        2.    No Strong Inference of Scienter with Regard to Alleged
            "Accommodations Fraud." .....................................................15

            a.    The "Accommodations Fraud" Claims Against
                Whetzel and Rowan Fail Because the Complaint
                Does Not Allege Scienter ..............................................16

            b.    The Complaint Fails to Allege a Strong Inference
                of Scienter Because There Are Plausible Opposing
                Inferences of Non-Fraudulent Intent .............................17

                (1)    Individual Defendants' Stock Sales Do Not
                    Raise a Strong Inference of Scienter ...................17

(2)    The Confidential Witness Testimony Does Not Establish A Strong Inference of Scienter .....18

(3)    Pleading Motive and Opportunity Is Insufficient to Establish Scienter .........................21

(4)    GAAP Violations Do Not Raise A Strong Inference of Scienter ...........................................23

D.    Counts IV and V Fail Because Plaintiffs Fail to Plead a Primary Violation...........................................................................................24

E.    Count VI Fails Because Plaintiffs Fail to Plead a Predicate Violation...........................................................................................24

III.    CONCLUSION ........................................................................................25

## TABLE OF AUTHORITIES

Page

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ............................................................................. 13

*Amalgamated Bank v. Coca-Cola Co.*,
   No. Civ. A. 1:05-CV-1226, 2006 WL 2818973 (N.D. Ga. Sept. 29, 2006) ......... 8

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
   482 F.3d 1309 (11th Cir. 2007) ............................................................................. 4

*Brooks v. Blue Cross & Blue Shield*,
   116 F.3d 1364 (11th Cir. 1997) ............................................................. 4, 18, 22

*Carlucci v. Owens-Corning Fiberglas Corp.*,
   646 F. Supp. 1486 (E.D.N.Y. 1986) ..................................................................... 4

*City of Philadelphia v. Fleming Cos.*,
   264 F.3d 1245 (10th Cir. 2001) ..................................................................... 5, 21

*DSAM Global Value Fund v. Altris Software*,
   288 F.3d 385 (9th Cir. 2002) ............................................................................. 23

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................. 12, 13, 14

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
   594 F.3d 783 (11th Cir. 2010) ......................................................... 10, 11, 18, 25

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ............................................................................................. 5

*Foman v. Davis*,
   371, U.S. 178 (1962) ......................................................................................... 25

*Glaser v. Enzo Biochem, Inc.*,
   464 F.3d 474 (4th Cir. 2006) ............................................................................. 13

*Griffin v. Dugger*,
   823 F.2d 1476 (11th Cir. 1987) ......................................................................... 13

*Grossman v. Novell, Inc.*,
  120 F.3d 1112 (10th Cir. 1997) ...................................................................8

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ..............................................................6, 7

*In re Alpharma, Inc. Sec. Litig.*,
  372 F.3d 137 (3d Cir. 2004) .....................................................................25

*In re Coca-Cola Enters. Inc. Sec. Litig.*,
  510 F. Supp. 2d 1187 (N.D. Ga. 2007)...................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) .......................................................................14

*In re Northpoint Commc'ns Group*,
  221 F. Supp. 2d 1090 (N.D. Cal. 2002).................................................19

*In re S1 Corp Sec. Litig.*,
  173 F. Supp. 2d 1334 (N.D. Ga. 2001)....................................................8

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003).....................................................7

*In re United States Aggregates, Inc., Sec. Litig.*,
  235 F. Supp. 2d 1063 (N.D. Cal. 2002)...........................19, 20, 23, 24

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
  537 F.3d 527 (5th Cir. 2008) .............................................................10, 18

*Laperriere v. Vesta Ins. Group, Inc.*,
  526 F.3d 715 (11th Cir. 2008) (per curiam) .........................................24

*McDonald v. Alan Bush Brokerage Co.*,
  863 F.2d 809 (11th Cir. 1989) .................................................................15

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ........................................................passim

*Phillips v. Scientific-Atlanta, Inc.*,
  374 F.3d 1015 (11th Cir. 2004) ..................................................9, 15, 22

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................ 12

*Rogers v. Nacchio*,
   241 F. App'x 602 (11th Cir. 2007) ................................................................... 4

*Skubella v. Checkfree Corp.*,
   Civil Action No. 1:07-CV-796, 2008 WL 1902118 (N.D. Ga. Apr. 25,
   2008) ................................................................................................................ 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................... passim

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ..................................................................... 3

*Yellen v. Hake*,
   437 F. Supp. 2d 941 (S.D. Iowa 2006) ......................................................... 7

*Ziemba v. Cascade Int'l*,
   256 F.3d 1194 (11th Cir. 2001) ................................................................... 25

**STATUTES**

15 U.S.C. § 78u-4(b)(4) (2006) ........................................................................... 12

15 U.S.C. § 78u-5(i) ............................................................................................. 6

15 U.S.C. § 78u-5(c)(1)(A)(i) .............................................................................. 7

15 U.S.C. § 78u-5(c)(1)(B)(i) .............................................................................. 7

15 U.S.C. § 78u-5(c)(1)(B)(ii) ............................................................................. 7

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................... 3, 4, 18, 22

Fed. R. Civ. P. 10b5-1 ........................................................................................ 25

Defendants, Frederick J. Rowan, II ("Rowan"), Michael D. Casey ("Casey"),

Andrew North ("North") and Charles E. Whetzel, Jr. ("Whetzel" and, collectively

with Rowan, Casey and North, the "Individual Defendants"), respectfully submit

this Memorandum in Support of their Motion to Dismiss With Prejudice Plaintiffs'

First Amended and Consolidated Class Action Complaint ("Compl." or

"Complaint").

## I.    SUMMARY OF THE CASE

Carter's, Inc. ("Carter's" or the "Company") is a Delaware corporation that

designs, sources and markets apparel for babies and young children throughout the

United States. (Compl., ¶¶ 33, 56). Lead Plaintiff, Plymouth County Retirement

System ("Plymouth"), filed this action purportedly on behalf of a class of

purchasers of the Company's publicly-traded securities between March 16, 2005

and November 10, 2009 (the "Class Period"). (Compl., ¶ 2). The Complaint

contains two distinct sets of allegations, designated as the "OshKosh Fraud" and

the "Accommodations Fraud."

The crux of Plaintiffs' OshKosh allegations is that Rowan, Casey, Whetzel

and Joseph Pacifico (the "OshKosh Individual Defendants"), misrepresented the

growth and profit opportunity associated with Carter's 2005 acquisition of

OshKosh B'Gosh, Inc. ("OshKosh"). The Complaint claims "that rather than

being the growth engine of the future for Carter's, the OshKosh acquisition was a

1

failure." (Compl. ¶ 287). According to the Complaint, the alleged "falsity" of the Defendants' misrepresentations became known on July 24, 2007, when Carter's recorded a non-cash impairment charge and wrote down the estimated value of OshKosh's "goodwill."

Understandably, the Complaint does not challenge a single numerical forecast of OshKosh's "growth prospects" or allege that any release of actual net sales was false or misleading. Instead, the Complaint quotes snippets of forward-looking statements from six earnings calls and from two presentations given at investor conferences. (Compl., ¶¶ 192-279). The Complaint then asserts that each forward-looking statement "was false or misleading" because Defendants allegedly "knew or were extremely reckless in not knowing" that OshKosh's "growth prospects" were non-existent.

With respect to the "Accommodations Fraud," Plaintiffs allege that the Individual Defendants "smoothed" Carter's financials by booking customer "accommodations" in incorrect periods in order "to portray the false impression that Carter's was a company capable of delivering consistent and predictable earnings." (Compl. ¶¶ 4, 14). Plaintiffs do not, however, allege any direct evidence that any Individual Defendant booked or gave an instruction to book accommodations improperly or point to a single confidential witness who observed any Individual Defendant engaged in improper booking. Plaintiffs merely allege

2

that the Individual Defendants "must have" been a part of the improper booking scheme because of their respective corporate positions.

Plaintiffs' OshKosh allegations fail to state a claim for three independently-dispositive reasons. First, Plaintiffs fail to identify any misstatements of fact and instead base their claims on forward-looking statements that are protected by the safe harbor provisions of the Private Securities Litigation Reform Act ("PSLRA"). In addition, Plaintiffs fail to allege with particularity facts giving rise to a strong inference of scienter. Finally, Plaintiffs fail to plead loss causation.

Plaintiffs fare no better with respect to the so-called "Accommodations Fraud." As discussed below, Plaintiffs lack standing to assert these claims. Moreover, the Complaint fails to allege facts sufficient to create a strong inference of scienter.

## II. ARGUMENT AND CITATION TO LAW

### A. Legal Standard for Motions to Dismiss

Federal Rule 9(b) serves the essential function of alerting defendants "to the precise misconduct with which they are charged" and protecting defendants "against spurious charges of immoral and fraudulent behavior." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006). To satisfy Rule 9(b), a complaint containing fraud-based claims must set forth the following with respect to each allegation of fraud:

3

(1)    *precisely* what *statements* were made in what documents or oral
       representations or what omissions were made;

(2)    the *time* and *place* of each such statement and *person* responsible for
       making (or, in the case of omissions, not making) same;

(3)    the *content* of such statements and the *manner* in which they misled
       the plaintiffs;  and

(4)    what the defendants *obtained* as a consequence of the fraud.

*Rogers v. Nacchio*, 241 F. App'x 602, 607-08 (11th Cir. 2007) (emphasis added).

Moreover, where the defendant is a company, as is the case here, the

complaint must also identify the specific person at the company who made the

alleged misrepresentation or omission.[1]  In addition, in the context of a multi-

plaintiff and multi-defendant lawsuit such as this one, a plaintiff may not lump

parties together.  On the contrary, the allegations in the complaint must be made

with this level of specificity as to *each separate plaintiff* and *each specific*

*defendant.*[2]

---

[1] *See, e.g., Carlucci v. Owens-Corning Fiberglas Corp.*, 646 F. Supp. 1486, 1490
(E.D.N.Y. 1986) (under heightened pleading requirement involving claims of
fraud, plaintiff must identify the specific person at the defendant company who
made the alleged misrepresentation).

[2] *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th
Cir. 2007) (dismissing plaintiff's RICO claim against multiple defendants for
failure to comply with Rule 9(b) where the complaint did not discuss "the nature of
each defendant's participation in the scheme," precisely set forth "each alleged
statement, document or misrepresentation made," or specify "the content or
manner in which the statements misled [the plaintiff]."); *Brooks v. Blue Cross &
Blue Shield*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (holding that a RICO
complaint did not satisfy Rule 9(b) because it was devoid of specific allegations
with respect to each defendant; instead, the plaintiffs lumped together all of the
defendants in their allegations of fraud).

4

Plaintiffs asserting private securities actions must also meet the exacting pleading requirement of the PSLRA. "As a check against abusive litigation by private parties" Congress made two changes to the pleading requirements through the PSLRA. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Under the heightened pleading instructions of the PSLRA, any private securities complaint alleging that a defendant made a false or misleading statement must: (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Id.* at 313; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976) (the plaintiff must state the facts evidencing the defendant's intention to "deceive, manipulate, or defraud").    Moreover, to establish scienter, a securities plaintiffs must demonstrate that the defendant "knew of the potentially material fact" and "knew that failure to reveal the potentially material fact would likely mislead investors." *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001). The failure to meet this exacting pleading standard warrants dismissal of a complaint. *Tellabs, Inc.*, 551 U.S. at 316.

5

### B.    The "OshKosh Fraud" Allegations

#### 1.    Plaintiffs' OshKosh Claims Are Barred by The Safe Harbor of the PSLRA.

The Complaint does not allege that a single *fact* related to OshKosh in any of Carter's Forms 10-K, 10-Q, or 8-K during the alleged Class Period was inaccurate.  Plaintiffs' OshKosh allegations rest on their contention that the Individual OshKosh Defendants' public statements expressed an overly-optimistic view of the future with regard to the OshKosh brand.[3]  Such statements, however, fall squarely within the safe harbor provisions for forward-looking statements under the PSLRA.

A "forward-looking" statement includes:  (A) "a statement containing a projection of revenues;" (B) "a statement of the plans and objectives of management for future operations;" (C) "a statement of future economic performance;" and (D) "any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C)."[4]  Without exception, all

---

[3] Notably, the Complaint does not allege *any* statements made by Whetzel, and, therefore, dismissal is warranted in his favor on that ground alone.

[4] 15 U.S.C. § 78u-5(i).  The PSLRA safe harbor applies not only to statements that are forward-looking because expressed in the future tense, or in terms of belief or expectation about the future, but also to statements that, while stated in the present tense, are dependent upon future events before the truth or falsity can be decided. *See Harris*, 182 F.3d at 805.

of the alleged OshKosh misrepresentations fall into one or more of these categories.

The statutory safe harbor prescribes two *independent* bases upon which a court must dismiss claims based on forward-looking statements. Such statements are not subject to liability (1) where they are accompanied by meaningful cautionary language or (2) where plaintiffs failed to plead or prove they were made with "actual knowledge."[5] Both bases exist here.

Each of the forward-looking statements identified in the Complaint was accompanied by meaningful cautionary language that is "detailed and informative" and warns of "risks of a significance similar to that actually realized." *See Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999). For example, the Carter's investors who listened to the Company's earnings calls were specifically warned that "statements made on this conference call and in the Company's press release, other than those concerning historical information, should be considered forward-looking statements, and actual results may differ materially." *E.g.*, Declaration of Christopher G. Green in Supp. of Def.'s Mot. to Dismiss, dated April 30, 2010

---

[5] *See* 15 U.S.C. § 78u-5(c)(1)(A)(i), (c)(1)(B)(i), (c)(1)(B)(ii); *Yellen v. Hake*, 437 F. Supp. 2d 941, 961 (S.D. Iowa 2006) (the PSLRA is "worded in the disjunctive" providing two independent methods to reach the safe harbor); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1164 (C.D. Cal. 2003) (The "two prongs of the safe harbor provision are taken to be independent, alternative means by which a defendant may insulate itself from liability.").

("Green Decl."), Ex. 4 (2/22/06 Earnings Call) at 1.[6] This type of cautionary

language constitutes a meaningful warning with respect to conference call

statements.[7]

In addition to the meaningful warnings provided on earnings calls, Carter's

provided meaningful warnings in each of its public filings.  For example, Carter's

Form 10-K for the 2005 fiscal year, filed on February 28, 2007, specifically

disclosed the risk of an impairment of goodwill.  Green Decl. Ex. 18 (FY2006

Form 10-K) at 11.  Consequently, the PSLRA's safe harbor applies to each of the

statements identified in the Complaint.[8]

Alternatively, even in the absence of meaningful cautionary language, the

PSLRA safe harbor provisions apply because Plaintiffs fail to show that any

---

[6] *See also* Green Decl. Ex. 8 (4/26/06 Earnings Call) at 1;  Ex. 10  (7/26/06
Earnings Call) at 1; Ex. 13 (10/25/06 Earnings Call) at 1; Ex. 17 (2/21/07 Earnings
Call) at 1; Ex. 21 (4/25/07 Earnings Call) at 1.

[7] *See, e.g., Skubella v. Checkfree Corp.*, Civil Action No. 1:07-CV-796, 2008 WL
1902118, at * 8 (N.D. Ga. Apr. 25, 2008) (finding a warning that "actual results
may differ from these current expectations" provided meaningful cautionary
language); *Amalgamated Bank v. Coca-Cola Co.*, No. Civ. A. 1:05-CV-1226, 2006
WL 2818973, at *6 (N.D. Ga. Sept. 29, 2006) (ruling that nearly identical warning
prior to a conference call that incorporated Form 10K risk factors constituted
meaningful cautionary language).

[8] The Individual OshKosh Defendants' alleged representations were, at worst,
general statements of corporate optimism or puffery.  Federal case law is clear that
such statements are not actionable under the PSLRA.  *See In re S1 Corp Sec. Litig.*,
173 F. Supp. 2d 1334, 1350 (N.D. Ga. 2001); *Grossman v. Novell, Inc.*, 120 F.3d
1112, 1121 (10th Cir. 1997).

8

statement was made with actual knowledge of falsity. (Compl., ¶ 298). The Complaint is devoid of any particularized facts alleging *which* Individual OshKosh Defendants allegedly knew *which* statement was false, or even *when* or *how* they knew these facts. Simply repeating the refrain that an Individual OshKosh Defendant "knew or was reckless in not knowing" that the statements were false fails to meet the pleading standard required by the PSLRA.

> ## 2. The Complaint Does Not Establish a Strong Inference of Scienter with Regard to OshKosh Allegations.

> ### a. The Complaint Contains No Scienter Allegations With Respect to Whetzel.

The Complaint fails to plead any facts alleging the scienter element with respect to Whetzel. This failure warrants dismissal of the OshKosh claims as to him.[9] In fact, the only allegation regarding Whetzel and the alleged OshKosh fraud is that Whetzel sold shares of Carter's stock during the relevant time period, without any reference to his historical stock sales. This allegation of scienter is deficient as a matter of law. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1253 (11th Cir. 2008) (stock sales by insiders are only relevant to scienter when they are suspicious).

---

[9] *See Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004) (to survive a motion to dismiss, Plaintiffs must allege facts supporting a strong inference of scienter "for each defendant with respect to each violation").

9

### b.   The Individual OshKosh Defendants' Stock Sales Do Not Raise a Strong Inference of Scienter.

Plaintiffs seek to raise an inference of scienter by alleging that the Individual OshKosh Defendants sold shares of Carter's stock during the class period to take advantage of artificially-inflated stock prices. (Compl., ¶¶ 251-252). Stock sales by insiders are only relevant to scienter when they are suspicious. *Mizzaro*, 544 F.3d at 1253. "The complaint must allege some information about the insider's trading history for [the court] to determine whether 'the level of trading is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 791 (11th Cir. 2010)(citing *Mizzaro*, 544 F.3d at 1253); *see also Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 543 (5th Cir. 2008) (noting that suspicious sales are those made out of line with earlier trading customs). The Complaint contains a chart that outlines the number of shares the Individual OshKosh Defendants sold during the class period. (Compl., ¶ 293). The Complaint, however, contains no allegations regarding *any* Defendant's trading

10

history. Therefore, none of the allegations regarding stock sales during the Class

Period is relevant to the scienter inquiry, nor raises a strong inference of scienter.[10]

### c.  Confidential Witness Testimony Fails to Establish Scienter.

The Complaint relies on various confidential witnesses to support the

allegation that the Individual OshKosh Defendants "must have known" the

forward-looking statements were false. Tellingly, no confidential witness asserts

that any Individual OshKosh Defendant made any statement that was false or that

the confidential witness ever told an Individual OshKosh Defendant anything that

contradicted a forward-looking statement. To the contrary, all the confidential

witnesses provide is vague, anecdotal observations.

For example, Plaintiffs rely upon confidential witness testimony to contend

that the Individual OshKosh Defendants made false statements regarding the Fall

2006 line because "they" possessed certain "booking information" at the time they

made these statements. (Compl., ¶¶ 223, 225, 227). Significantly, Plaintiffs fail to

allege *who* had this booking information, *what* the booking information actually

said, *i.e.*, *which* customers' booking information was available in February 2006

and *which* customers' booking information was not yet available, or even *when*

---

[10]  *See Edward J. Goodman Life Income Trust*, 594 F.3d at 793 (explaining the Court gave "the conclusory allegations of insider trading no weight in considering the inference of scienter" where plaintiffs failed to allege the insider's trading history before the class period).

each Defendant received this information. Without any of these facts, Plaintiffs

fall short of the exacting pleading requirements of the PSLRA, and their claims

should be dismissed.

### 3. OshKosh Claims Fail Because Plaintiffs Failed To Allege Loss Causation.

Plaintiffs also fail to allege that the Individual OshKosh Defendants' alleged

misrepresentations regarding the OshKosh acquisition caused any loss. The

PSLRA expressly imposes on plaintiffs the "burden of proving" that the

defendant's misrepresentation "caused the loss for which plaintiff seek to recover."

15 U.S.C. 78u-4(b)(4) (2006). The statute makes clear Congress' intent to permit

private securities fraud actions recovery only where plaintiffs adequately allege,

and ultimately prove, the traditional elements of causation and loss. *Dura Pharm.,*

*Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

To allege loss causation, the plaintiff must show that the "untruth was in

some reasonably direct, or proximate way responsible for his loss." *See Robbins v.*

*Koger Props.*, 116 F.3d 1441, 1446 (11th Cir. 1997). Nowhere in the Complaint

do Plaintiffs explain how the alleged misrepresentations in the Company's press

releases, earnings calls and other documents *caused* their economic loss. In short,

Plaintiffs fail to allege how any "untruth" regarding the OshKosh transaction was

responsible for any loss. Instead, the Complaint alleges that "[b]y early 2006,

12

Carter's stock was up 61% from the time the OshKosh acquisition was announced ..." (Compl., ¶ 221). The Complaint then goes on to allege subsequent drops and even a rise in the stock price up until July 25, 2007. (Compl., ¶¶ 237, 258, 275, 288). In fact, Carter's stock price declined throughout the Class Period in amounts equal to or greater than the decline following the release of Carter's financials for second quarter of 2007, thus negating any inference that the disclosure of the impairment charge "caused" a decline in the stock price. Plaintiffs' failure to allege loss causation, a necessary element to assert a securities violation, mandates dismissal of the OshKosh claims as a matter of law.

### C.    The "Accommodations Fraud" Allegations

#### 1.    Plaintiffs Lack Standing to Bring the "Accommodations Fraud" Claims.

A class action claim cannot be maintained unless at least one of the named plaintiffs suffered the injury upon which the claim is based. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). "It is only after the fraudulent conduct is disclosed to the investing public, followed by a drop in the value of the stock, that the hypothetical investor has suffered a 'loss' that is actionable after the Supreme Court's decision in *Dura*." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009). To successfully plead damages and loss causation, a plaintiff must identify a disclosure that corrected the alleged "inflation" in the value of the

13

stock by revealing the alleged fraud to the market, leading to a drop in the value of the stock that directly caused the plaintiff's losses. A plaintiff who sells all of his shares *before* the market learns of the alleged fraudulent conduct does not suffer damages because the stock price has not been "corrected" and thus remains inflated at the time of the sale.[11]

Plaintiffs' causation theory is based upon two purported disclosures by Carter's: the October 27 release and the November 9 release. (Compl., ¶¶ 99, 100, 301, 303). Plymouth did not own stock at the time of either announcement and, in fact, made a profit trading between the two announcements. Beyond question, Plymouth has no standing here.

Mylroie owned Carter's stock only for a two-week period, disposing of his shares immediately after the October 27 release. The October 27 release announced a delay in Carter's announcement of third quarter 2009 earnings. Carter's did not disclose any alleged fraudulent conduct or correct any prior alleged misstatements. Carter's likewise did not restate any financial results. Given these facts, the October 27 release cannot give rise to liability. Nor can

---

[11] *Dura*, 544 U.S. at 342 ("If the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) (excluding "in-and-out" traders from the class because they had failed "to demonstrate that any of the information that 'leaked' into the market prior to [the date of the corrective disclosure] revealed the truth with respect to the specific misrepresentations alleged").

Mylroie rely on the November 9 release because he did not own Carter's stock at that date.

### 2. No Strong Inference of Scienter with Regard to Alleged "Accommodations Fraud"

To survive a motion to dismiss, Plaintiffs must allege facts supporting a strong inference of scienter "*for each defendant with respect to each violation.*" *Phillips*, 374 F.3d at 1016 (emphasis added). To that end, Plaintiffs must plead "with particularity facts giving rise to a strong inference that the Defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." *Mizzaro*, 544 F.3d at 1238.[12] In *Tellabs*, the Supreme Court explained the meaning of "strong inference" as:

> It does not suffice that a reasonable fact finder plausibly could infer from the Complaint's allegation the requisite state of mind. [Instead, a court] must engage in a comparative evaluation; it must consider not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other uncommon non-culpable

---

[12] In the Eleventh Circuit, Plaintiffs must "plead scienter with particular facts giving rise to a strong inference that the defendant acted in a severely reckless manner." *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1199 (N.D. Ga. 2007) (internal quotation marks omitted). *See also, McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989) ("Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it").

explanations for the defendant's conduct. To qualify as
"strong" . . . we hold, an inference of scienter must be more
than merely plausible or reasonable – it must be cogent and at
least as compelling as any opposing inference of non-fraudulent
intent.

551 U.S. at 313-16. Plaintiffs fail woefully to meet this exacting pleading

standard.

      **a.**    **The "Accommodations Fraud" Claims Against
Whetzel and Rowan Fail Because the Complaint Does
Not Allege Scienter.**

The only scienter allegation with respect to Whetzel is that he sold stock at a

profit during the class period. (Compl., ¶ 37). This allegation of scienter is

insufficient as a matter of law. *See Mizzaro*, 544 F.3d at 1253 (stock sales are only

relevant if they are suspicious); *see also* infra Section II (C)(2)(b)(1) (regarding the

requirement that complaints must allege information regarding the insider's trading

history).

The only scienter allegations with respect to Rowan are (1) he sold stock at a

profit during the class period and (2) he certified the accuracy of the Company's

Form 10-K and Forms 10-Q for various years. (Compl., ¶ 34). These allegations

of scienter are equally insufficient. *See Mizzaro*, 544 F.3d at 1253.

16

**b.   The Complaint Fails to Allege a Strong Inference of Scienter Because There Are Plausible Opposing Inferences of Non-Fraudulent Intent.**

In determining whether the pleaded facts give rise to a "strong" inference of scienter, "the court must take into account plausible opposing inferences." *Tellabs, Inc.*, 551 U.S. at 323. Thus, a court must consider "plausible, nonculpable explanations for the defendant's conduct." *Id.* at 324. A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* "In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326.

Simply stated, Plaintiffs do not articulate a cogent and compelling scienter theory that does not have at least an equally-plausible, nonculpable opposing inference of non-fraudulent intent.

**(1)   Individual Defendants' Stock Sales Do Not Raise a Strong Inference of Scienter.**

Plaintiffs seek to raise an inference of scienter by alleging that the Individual Defendants sold shares of Carter's stock during the Class Period and made a profit. (Compl., ¶¶ 34-38). Stock sales by insiders are only relevant to scienter when the sales are suspicious. *Mizzaro*, 544 F.3d at 1253. "The complaint must allege some information about the insider's trading history for [the court] to determine whether

17

'the level of trading is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *Edward J. Goodman Life Income Trust*, 594 F.3d at 791 (citing *Mizzaro*, 544 F.3d at 1253); *see also Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 543 (5th Cir. 2008) (noting that suspicious sales are those made out of line with earlier trading customs).

Plaintiffs' Complaint contains no allegations regarding *any* Individual Defendant's trading history. Therefore, none of the allegations regarding the Individual Defendants' stock sales during the Class Period are relevant to the scienter inquiry. *See Edward J. Goodman Life Income Trust*, 594 F.3d at 793.

### (2)    The Confidential Witness Testimony Does Not Establish A Strong Inference of Scienter.

Plaintiffs next seek to establish a strong inference of scienter by relying on confidential witness testimony to describe the nature of the alleged accommodations scheme as one that necessarily involved upper management. Plaintiffs' confidential witness testimony, however, does not provide any basis for concluding that the scheme must have originated with upper management, and the absence of these allegations is fatal to Plaintiffs' Complaint.[13] The confidential

---

[13] *See, e.g., Brooks*, 116 F.3d at 1380-81 (holding that a RICO complaint did not satisfy Rule 9(b) because it was devoid of specific allegations with respect to each

witness testimony does not state *who* in upper management instructed salespeople to commit fraud, *who* in sales received a directive from upper management, *what* role they each played, *when* upper management knew about or initiated the scheme, *when* the accommodations were misbooked, *which* companies' accommodations were misbooked or even *how much* was misbooked. "[T]o contribute meaningfully toward a 'strong inference' of scienter … allegations attributed to unnamed sources must be accompanied by enough particularized detail to support a reasonable conviction in the informant's basis of knowledge." *In re Northpoint Commc'ns Group*, 221 F. Supp. 2d 1090, 1097 (N.D. Cal. 2002). Here, the confidential witnesses' statements are too generalized and vague to satisfy the exacting pleading requirements of the PSLRA. *See, e.g.,* (Compl., p.28) (the business was not run "honestly"). For example, although CW1 purports to have knowledge regarding the alleged "Accommodations Fraud," his recitation of the fraud relies on hearsay and naked assertions of the executives' authority.[14] CW1 claims that "Casey and North were the financial architects of the

---

defendant; instead, the plaintiffs lumped together all of the defendants in their allegations of fraud).

[14] *See In re United States Aggregates, Inc., Sec. Litig.*, 235 F. Supp. 2d 1063, 1074-75 (N.D. Cal. 2002) (confidential witness testimony lacks particularity necessary to raise an inference of scienter where, among other deficiencies, confidential witness relied on hearsay and plain assertions of defendant's authority).

Accommodations Fraud." (Compl., ¶ 68). CW1 supposedly bases this claim on "meetings" and "conversations that [he] had with people . . . ." The Complaint is unclear whether CW1 even attended these "meetings" and whether his claim is based entirely on hearsay. Regardless, CWI fails to identify the "people" with whom he spoke, *when* these conversations took place or *where* these conversations took place. Most significantly, CW1 fails to identify what role Casey or North supposedly had in the alleged scheme: *who* directed employees to book accommodations in a particular quarter? *Which* employees did the defendant direct to book accommodations and what did they direct them to do? *Which* accommodations allegedly were improperly booked? And, in *which* quarters were the accommodations allegedly misbooked and rebooked? CW1's allegations fall far short of showing a strong inference of scienter because, among other things, they demonstrate neither knowledge nor participation by the Individual Defendants in the alleged "Accommodations Fraud." *See In re U.S. Aggregates, Inc., Sec. Litig.*, 235 F. Supp. 2d at 1075.

Likewise, CW2 alleges that there was a master spreadsheet tracking the Company's accommodations and because the Individual Defendants had "access" to it they must have known about the alleged fraud. (Compl., ¶ 63). But, the Complaint does not allege that **any** of the Individual Defendants, let alone *each* of them as required by the PSLRA, ever saw the spreadsheet, ever discussed the

20

spreadsheet with anyone, ever input data into the spreadsheet, or had anything whatsoever to do with the spreadsheet. Moreover, the Complaint does not allege that the spreadsheet revealed the existence of any improper accounting for the accommodations.

### (3)    Pleading Motive and Opportunity Is Insufficient to Establish Scienter.

Plaintiffs also seek to establish scienter by alleging that the Individual Defendants' annual cash bonuses, which were tied to Carter's earnings, provided the motivation for the alleged "Accommodations Fraud." (Compl., ¶¶ 79-88). Of course, pleading motive and opportunity alone will not establish the requisite scienter. *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1263 (10th Cir. 2001). Such allegations cannot support a strong inference of scienter because there are equally plausible, non-fraudulent inferences that can be drawn from upper management's desire to attain their bonuses. Indeed, there is nothing nefarious about upper management seeking to hit its target numbers. That is management's job.

Although Plaintiffs *suggest* that someone in upper management "must have" been manipulating the actual numbers to exceed the Company's guidance numbers, Plaintiffs fail to allege *which* Individual Defendant was manipulating the numbers or *how* this phantom defendant accomplished this manipulation. Plaintiffs are

21

required to allege facts supporting a strong inference of scienter "for each defendant with respect to each violation," *Phillips*, 374 F.3d at 1016; and the failure to allege this level of specificity is fatal to Plaintiffs' Complaint.[15]

Similarly, Plaintiffs allege Carter's required the Individual Defendants to own a certain amount of Carter's stock and imply that their ownership of the stock incented the Individual Defendants to inflate the stock price artificially. *See* (Compl., ¶ 91). But, Plaintiffs do not allege facts to establish that any Individual Defendant, let alone *each* Defendant as required by the PSLRA ever intended to artificially inflate the stock price because of their required ownership of stock. Carter's stock ownership requirement, like that of many companies, is intended to incent management to grow the Company to the benefit of all investors. Given this equally-plausible, non-fraudulent rationale, Plaintiffs' allegations regarding the Individual Defendants' required stock ownership do nothing to create a strong inference of scienter. *See Tellabs, Inc.*, 551 U.S. at 324.

Finally, the Complaint alleges that Casey's desire to become CEO motivated him to participate in the alleged "Accommodations Fraud." (Compl., ¶ 74). Plaintiffs do not allege *how* Casey's motivation to become CEO compelled him to

---

[15] *See, e.g., Brooks*, 116 F.3d at 1380-81 (holding that a RICO complaint did not satisfy Rule 9(b) because it was devoid of specific allegations with respect to each defendant; instead, the plaintiffs lumped together all of the defendants in their allegations of fraud).

participate in the any fraud, *what* role he played to increase his chances of becoming CEO, or any particularized fact to suggest that Casey's motivation to become CEO translated into a specific act associated with the alleged "Accommodations Fraud." "To qualify as 'strong' ... an inference of scienter must be more than merely plausible or reasonable." *Tellabs, Inc.*, 551 U.S. at 316. Plaintiffs offer nothing more than conjecture.

### (4) GAAP Violations Do Not Raise A Strong Inference of Scienter.

The Complaint seeks to establish scienter by alleging that the Company's Restatement confirms that its prior financial statements violated GAAP. (Compl., ¶¶ 116-136). "As a general rule, failure to follow GAAP is not sufficient to raise an inference of scienter." *In re United States Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d at 1072. "Despite the admitted failure to comply with GAAP and the undisputedly suspicious nature of the transaction ... allegations of negligence are insufficient to establish a strong inference of deliberate recklessness." *Id.* (citing *DSAM Global Value Fund v. Altris Software*, 288 F.3d 385, 387 (9th Cir. 2002)). Indeed, "even an obvious failure to follow GAAP does not give rise to an inference of scienter." *Id.*[16]

---

[16] The Complaint half-heartedly seeks to establish scienter by stating that the United States Attorney's Office is conducting an inquiry into this matter. (Compl., ¶ 115). The mere fact that at some point the U.S. Attorney's Office conducted an

**D.    Counts IV and V Fail Because Plaintiffs Fail to Plead A Primary Violation.**

Counts IV and V allege that each of the Individual Defendants and the Individual OshKosh Defendants respectively violated Section 20(a) of the Exchange Act as alleged "controlling persons." (Compl., ¶¶ 334-37). Section 20(a) of the Exchange Act "imposes derivative liability on persons that control primary violators of the Act." *Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 721 (11th Cir. 2008) (per curiam). To state a claim under § 20(a), Plaintiffs must allege, *inter alia*, that Carter's committed a primary violation of the securities laws. *Mizzaro*, 544 F.3d at 1237. Plaintiffs' failure to plead a primary violation of the securities laws is fatal to their section 20(a) claims.

**E.    Count VI Fails Because Plaintiffs Fail to Plead a Predicate Violation.**

Count VI claims that the Individual Defendants violated Section 20A because they allegedly traded on the basis of material, non-public information. (Compl., ¶¶ 342-50). The Section 20A claim fails because Plaintiffs cannot establish a predicate violation. *See Edward J. Goodman Life Income Trust*, 560 F. Supp. 2d at 1245-46. Because the Individual Defendants traded either within approved trading windows or pursuant to scheduled Rule 10b5-1 trading plans, the

---

inquiry does not provide the basis for a strong inference of scienter. *See Mizzaro*, 544 F.3d at 1244.

Complaint fails to allege that any trade was made on the basis of material, non-public information.

### III.    CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.[17]

Dated:  April 30, 2010

/s/ R. Matthew Martin
R. Matthew Martin (Ga. Bar No. 473450)
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA  30308-2222
(404) 815-2205
mattmartin@paulhastings.com

Attorneys for Frederick J. Rowan, II,
Michael D. Casey, Andrew North and
Charles E. Whetzel, Jr.

---

[17] Plaintiffs have attempted to plead their claims four times.  Plaintiffs have had the benefit of five law firms and four months since the end of the class period to conduct additional factual investigations necessary to refine their claims. Accordingly, the Court should not grant Plaintiffs leave to replead.  Any further amendment would be futile and cause undue delay in the final resolution of this matter.  *See Foman v. Davis*, 371, U.S. 178, 182 (1962); *Ziemba v. Cascade Int'l*, 256 F.3d 1194, 1212 (11th Cir. 2001); *In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137, 153-54 (3d Cir. 2004).

## CERTIFICATE OF COMPLIANCE WITH RULE 5.1B

Pursuant to Local Rule 7.1(D), N.D. Ga. L.R., I hereby certify that the

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS WITH

PREJUDICE PLAINTIFFS' FIRST AMENDED AND CONSOLIDATED CLASS

ACTION COMPLAINT has been prepared using one of the font and point

selections approved by the Court in Local Rule 5.1B, N.D. Ga.  This document was

prepared using Times New Roman (14 pt.)

Dated:  April 30, 2010.

/s/ R. Matthew Martin
R. Matthew Martin (Ga. Bar No. 473450)
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA  30308-2222
(404) 815-2205
mattmartin@paulhastings.com

Attorneys for Frederick J. Rowan, II,
Michael D. Casey, Andrew North and
Charles E. Whetzel, Jr.

26

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2010, I filed a copy of MEMORANDUM

IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE PLAINTIFFS'

FIRST AMENDED AND CONSOLIDATED CLASS ACTION COMPLAINT,

with the Clerk of Court using the CM/ECF system, which automatically sent e-

mail notification of such filing to the following attorneys of record, who are

registered participants in the Court's electronic notice and filing system:

James M. Evangelista
(Ga. Bar No. 707807)
David J. Worley
(Ga. Bar No. 707807)
EVANGELISTA &
 ASSOCIATES, LLC
One Glenlake Parkway
Atlanta, GA 30328

Alan I. Ellman, Esq.
Christopher J. Keller, Esq.
Jonathan Gardner, Esq
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005

Lionel Z. Glancy, Esq.
Michael G. Goldberg, Esq.
GLANCY BINKOW &
 GOLDBERG, LLP
Suite 311
1801 Avenue of the Stars
Los Angeles CA 90067

Randall W. Bodner
Christopher G. Green
ROPES & GRAY, LLP
One International Place
Boston, MA 02110-2624

W. Scott Sorrels
(Ga. Bar No. 667074)
Luke A. Lantta
(Ga. Bar No. 141407)
BRYAN CAVE LLP
One Atlantic Center
Fourteenth Floor
Atlanta, GA 30309

John A. Chandler
(Georgia Bar No. 120600)
Juanita P. Kuhner
(Georgia Bar No. 444648)
KING & SPALDING LLP
1180 Peachtree St., N.E.
Atlanta, GA 30309

William W. Stone
(Ga. Bar No. 273907)
HOLZER, HOLZER & FISTEL, LLC
200 Ashford Center North
Suite 300
Atlanta, GA 30338

Lisa T. Millican
GREENFIELD MILLICAN, P.C.
607 the Grant Building
44 Broad Street, NW
Atlanta, GA 30303

Diana L. Weiss
KING & SPALDING LLP
Suite 200
1700 Pennsylvania Avenue, NW
Washington, DC 20006

J. Marbury Rainer
PARKER HUDSON RAINER &
DOBBS
285 Peachtree Center Avenue, N.E.
1500 Marquis II Tower
Atlanta, GA 30303

This 30th of April, 2010

/s/ R. Matthew Martin
R. Matthew Martin

28