# Exhibit 1

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| In re | ) |
| CARTER'S, INC. | ) |
| SECURITIES LITIGATION | ) Civil Action No. 1:08-CV-2940-AT |
|  | ) |
|  | ) |

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT WITH PRICEWATERHOUSECOOPERS LLP AND MOTION FOR ATTORNEYS' FEES AND EXPENSES

**If you purchased the publicly traded securities of Carter's, Inc ("Carter's") during the period from March 16, 2005 through November 10, 2009, inclusive (the "Class Period"), and were allegedly damaged thereby, you may be entitled to a payment from this class action settlement.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- If approved by the Court, the proposed settlement with defendant PricewaterhouseCoopers LLP ("PwC" or the "Defendant") will provide a $3.3 million settlement fund for the benefit of eligible investors (the "Settlement") who purchased the publicly traded securities of Carter's during the Class Period, and were allegedly damaged thereby (the "Settlement Class").

- The Settlement resolves all remaining claims in a class action lawsuit concerning an alleged scheme to mislead investors regarding the financial condition and practices of Carter's during the Class Period; avoids the costs and risks of continuing the litigation, pays money to investors like you, and releases PwC from potential liability.

- The Settlement is in addition to a previously approved $20 million settlement with Carter's and certain related defendants (the "Carter's Settlement").

- Your legal rights are affected whether you act or do not act. Read this Notice carefully.

- The Court will review the Settlement at the Settlement Hearing to be held on _____, 2013.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **SUBMIT A CLAIM FORM BY** _____, **2013** | If you did *not* previously submit a claim in connection with the Carter's Settlement, you must do so now in order to be eligible to recover from the proposed Settlement with PwC. If you *did* previously submit a claim, you do not need to do so again, see Question [ ]. |
| **EXCLUDE YOURSELF BY** _____, **2013** | Get no payment. This is the only option that allows you to ever bring or be part of any *other* lawsuit about the Released Claims against the Defendant and the other Released Defendant Parties. This is the *only* option that removes you from the Settlement Class, if you are a Settlement Class Member. |
| **OBJECT BY** _____, **2013** | Write to the Court about why you do not like the Settlement, the proposed Plan of Allocation and/or the request for attorneys' fees and reimbursement of expenses. You will still be a member of the Settlement Class. |
| **GO TO A HEARING ON** _____, **2013** | Ask to speak in Court about the Settlement at the Settlement Hearing. |
| **DO NOTHING** | Get no payment, if you did not submit a claim in the Carter's Settlement. Give up rights. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement and whether to finally certify this as a class action. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## SUMMARY OF THIS NOTICE

**(a)**   **Statement of Plaintiffs' Recovery**

Pursuant to this proposed Settlement with PwC, a Settlement Fund consisting of $3.3 million in cash, plus any accrued interest, has been established.

Based on Lead Plaintiff's estimate of the number of shares of common stock entitled to participate in the Settlement, and assuming that all such shares entitled to participate do so, Lead Plaintiff estimates that the average recovery per allegedly damaged share of Carter's common stock would be approximately $0.13 per share, before deduction of Court-approved expenses, such as attorneys' fees and expenses.[1]  A Settlement Class Member's actual recovery will be a portion of the Net Settlement Fund determined by comparing his or her Recognized Claim to the total Recognized Claims of all Settlement Class Members who submit acceptable Proofs of Claim.  An individual Settlement Class Member's actual recovery will depend on, for example: (1) the total number of claims submitted; (2) when the Settlement Class Member purchased Carter's securities during the Class Period; (3) the purchase price paid; (4) the type of security purchased; and (5) whether those Carter's securities were held at the end of the Class Period or sold during the Class Period (and, if sold, when they were sold and the amount received).  *See* the Plan of Allocation beginning on page [____] for more information on your Recognized Claim.

**(b)    Statement of Potential Outcome if the Action Continued to Be Litigated**

The Settling Parties disagree about whether PwC is liable for the claims asserted against it and whether it caused any damages.  The issues on which the Settling Parties disagree include, but are not limited to: (a) whether PwC made any material misstatements or omissions; (b) whether PwC acted with the required state of mind; (c) the amount by which Carter's securities were allegedly artificially inflated (if at all) during the Class Period; (d) the extent to which the various matters that Lead Plaintiff alleged were false and misleading influenced (if at all) the trading price of Carter's securities at various times during the Class Period; (e) whether any purchasers of Carter's securities have suffered damages as a result of the alleged misstatements and omissions in Carter's public statements; (f) the extent of such damages, assuming they exist; (g) the appropriate economic model for measuring damages; and (h) the extent to which external factors, such as general market and industry conditions, influenced the trading price of Carter's securities at various times during the Class Period.

---

[1]    An allegedly damaged share might have been traded more than once during the Class Period, and the indicated average recovery would be the estimated average for each purchase of a share which allegedly incurred damages.  Of the gross settlement amount, up to $33,000 (before fees, expenses, taxes, and interest) will be allocated for claims on transactions in Carter's call and put options, reflecting estimated relative losses.

- 3 -

PwC denies that it did anything wrong, denies any liability to Lead Plaintiff, and denies that Lead Plaintiff and the Settlement Class have suffered any losses attributable to PwC's actions. While Lead Plaintiff believes that it has meritorious claims, it recognizes that there are significant obstacles in the way to recovery.

**(c)     Statement of Attorneys' Fees and Expenses Sought**

Lead Counsel intend to make a motion asking the Court to award it attorneys' fees of no more than 30% of the Settlement Fund, and reimbursement of litigation expenses incurred in prosecuting this action in an amount not to exceed \$____, plus any interest on such amounts at the same rate and for the same periods as earned by the Settlement Fund ("Fee and Expense Application"). If the Court approves the Fee and Expense Application, the average cost of attorney's fees and litigation expenses will be less than \$___ per share of common stock. The average cost per share will vary depending on the number of acceptable claims submitted. Lead Counsel has expended considerable time and effort in litigating the claims against PwC without receiving any payment, and has advanced the expenses of the litigation, such as the cost of experts, in the expectation that if it were successful in obtaining a recovery for the Settlement Class it would be paid from such recovery. In this type of litigation it is customary for counsel to be awarded a percentage of the common fund recovered as attorneys' fees.

**(d)     Further Information**

Further information regarding this action and this Notice may be obtained by contacting the Claims Administrator: _____, ___-___-____, www.___ or Lead Counsel: Labaton Sucharow LLP, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com.

### Do Not Call The Court With Questions About The Settlement

**(e)     Reasons for the Settlement**

For Lead Plaintiff, the principal reason for the Settlement is the immediate benefit to the Settlement Class. This benefit must be compared to the risk that no recovery might be achieved after a contested trial and likely appeals, possibly years into the future.

For PwC, who denies all allegations of wrongdoing or liability whatsoever, the principal reason for the Settlement is to eliminate the expense, risks, and uncertain outcome of the litigation.

**[END OF COVER PAGE]**

## A.   BASIC INFORMATION

| 1.      Why did I get this notice package? |
| --- |

You or someone in your family may have purchased the publicly traded securities of Carter's during the period from March 16, 2005 through November 10, 2009, inclusive.

The Court directed that this Notice be sent to Settlement Class Members because they have a right to know about a proposed settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.   The Court will review the Settlement at a Settlement Hearing on _____, 2013.  If the Court approves the Settlement, and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the Settlement allows.

This package explains the lawsuit, the Settlement, Settlement Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of Georgia.  This case results from the consolidation of two separately-filed actions, the first of which was filed by Plymouth County Retirement System and is referred to as the Plymouth Action and the second of which was filed by Scott Mylroie and is referred to as the Mylroie Action.  The Consolidated Action is known as *In re Carter's, Inc. Securities Litigation*, No. 1:08-CV-2940-AT and is assigned to United States District Judge Amy Totenberg.  The people who sued are called plaintiffs, and the companies and the persons they sued are called defendants.

The Lead Plaintiff in the Consolidated Action, representing the Settlement Class, is Plymouth County Retirement System.

The remaining Defendant in the Consolidated Action is PwC.

| 2.      What is this lawsuit about? |
| --- |

The main complaint in the Consolidated Action is the Second Amended and Consolidated Class Action Complaint for Violations of Federal Securities Laws

- 6 -

(the "Second Amended Complaint"). Following the Carter's Settlement, the only remaining defendant in this class action lawsuit is PwC. The Second Amended Complaint generally alleges, among other things, that PwC violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by making alleged misstatements and omissions during the Class Period in its audit opinions on Carter's publicly-filed consolidated year-end financial statements. The alleged misstatements concern the timing of when Carter's recognized accommodations made to certain customers, which PwC allegedly failed to detect during its audits of Carter's consolidated year-end financial statements. The Second Amended Complaint alleges that PwC issued false and misleading unqualified audit opinions in connection with its audits of Carter's consolidated year-end financial statements during the Class Period, which were purportedly conducted in accordance with U.S. Generally Accepted Auditing Standards ("GAAS"). The Second Amended Complaint further alleges that Lead Plaintiff and other Settlement Class Members purchased Carter's publicly traded securities during the Class Period at artificially inflated prices and were damaged thereby.

The Consolidated Action seeks money damages against PwC for violations of the federal securities laws. PwC denies all allegations of misconduct contained in the Second Amended Complaint, and denies having engaged in any wrongdoing whatsoever. The Settlement should not be construed or seen as evidence of or an admission or concession on the part of PwC with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that PwC has asserted.

| 3. | Why is this a class action? |
|---|---|

In a class action, one or more people called class representatives (in this case Lead Plaintiff Plymouth County Retirement System), sue on behalf of people who have similar claims. They are known as class members. Here, the Court certified this as a class action for purposes of the Settlement only. Bringing a case as a class action allows adjudication of many similar claims of persons and entities that might be economically too small to bring individual actions. One court resolves the issues for all class members, except for those who exclude themselves from the class. The Court will decide whether to finally certify this as a class action at the Settlement Hearing.

| **4.** | **Why is there a settlement?** |
|---|---|

The Court did not finally decide in favor of Lead Plaintiff or PwC. Instead, both sides, with the assistance of former United States District Judge Layn R. Phillips acting as a mediator, agreed to a settlement. That way, they avoid the risks and cost of a trial and the people affected will get compensation immediately, rather than after the time it would take to have a trial and exhaust all appeals. Lead Plaintiff and Lead Counsel think the Settlement is in the best interest of all Settlement Class Members.

## B.   WHO IS IN THE SETTLEMENT

To see if you are eligible to get money from this Settlement, you first have to decide if you are a Settlement Class Member.

| **5.** | **How do I know if I am part of the Settlement?** |
|---|---|

The Court directed, for the purpose of the proposed Settlement, that everyone who fits this description is a Settlement Class Member, unless they are an excluded person or they take steps to exclude themselves (see below): *all Persons who purchased the publicly traded securities of Carter's during the period from March 16, 2005 through November 10, 2009, inclusive and were allegedly damaged thereby.*

| **6.** | **Are there exceptions to being included in the Settlement Class?** |
|---|---|

Excluded from the Settlement Class are: the current or former defendants in the Consolidated Action; the officers and directors of Carter's; the partners and principals of PwC; the members of the immediate families of the former individual defendants in the Consolidated Action; the legal representatives, heirs, successors or assigns of any excluded Person; and any entity in which any current or former defendant has or had a controlling interest. Also excluded from the Settlement Class will be any Person who timely and validly seeks exclusion from the Settlement Class in accordance with the requirements explained below.

If one of your mutual funds purchased or owned shares of Carter's securities during the Class Period, that alone does not make you a Settlement Class Member. You are only eligible to be a Settlement Class Member if you directly purchased or otherwise acquired Carter's securities during the Class Period. Check your

- 8 -

investment records or contact your broker to see if you purchased or otherwise acquired Carter's securities during the Class Period.

If you sold Carter's securities during the Class Period, your sale alone does not make you a Settlement Class Member. You are eligible to be a Settlement Class Member only if you **purchased or otherwise acquired** your securities during the Class Period.

---

**7.   What if I am still not sure if I am included?**

If you are still not sure whether you are included, you can ask for free help. You can call ___-___-___ or visit www.___ for more information. Or you can fill out and return the Proof of Claim and Release form ("Proof of Claim") described on page [___], in question 10, to see if you qualify.

## C.   THE SETTLEMENT BENEFITS—WHAT YOU GET

---

**8.   What does the Settlement provide?**

In exchange for the Settlement and the release of the Released Claims (defined below) against the Released Defendant Parties (defined below), PwC has agreed to create a $3.3 million fund to be divided, after deduction of Court-awarded attorneys' fees and expenses, settlement administration costs, and any applicable taxes, among all Settlement Class Members who submit valid and timely claims. This will be in addition to any distribution from the Carter's Settlement.

---

**9.   How much will my payment be?**

Your share of the fund will depend on several things, including: (1) the total amount of Recognized Claims sent in by other Settlement Class Members; (2) how many Carter's securities you bought; (3) how much you paid for them; (4) when you bought them; (5) whether or when you sold them (and, if so, for how much you sold them).

Your Recognized Claim will be calculated according to the formula shown below in the Plan of Allocation. It is unlikely that you will get a payment for your entire Recognized Claim, given the number of potential Settlement Class Members. After all Settlement Class Members have submitted claims, the payment you get will be a portion of the Net Settlement Fund based on your Recognized Claim divided by the total of everyone's Recognized Claims, in each category of security.

*See* the Plan of Allocation beginning on page [____] for more information on your Recognized Claim.

### D.     HOW YOU GET A PAYMENT

| **10.     How can I get a payment?** |
| --- |

To be eligible for a payment from the Settlement, you must **EITHER**:

(1) have submitted a claim in connection with the prior Carter's Settlement by _____, 2013; OR

(2) if you ***did not*** submit a claim in connection with the Carter's Settlement by _____, 2013, you must timely submit a validly completed Proof of Claim with supporting documents (DO NOT SEND ORIGINALS of your supporting documents) in this Settlement.

DO NOT SUBMIT A CLAIM FORM IF YOU ALREADY SUBMITTED A TIMELY ONE IN CONNECTION WITH THE CARTER'S SETTLEMENT

If you submitted a claim in the Carter's Settlement by _____, 2013, that claim and the transactional information you already provided will be used to determine your eligibility for a payment from this Settlement. You are not being mailed a Proof of Claim with this Notice. If you previously received a letter from the Claims Administrator about your Carter's Settlement claim being incomplete, you must contact the Claims Administrator to rectify your claim to the Carter's Settlement. You can check the status of your claim in the Carter's Settlement or the transactions you previously submitted by logging into the website: www_____. Information about how to login is being mailed with this Notice. If you do not have access to the website, you can call the Claims Administrator at (800) _____ - _____.

If the Claims Administrator **did not** receive a claim from you in connection with the Carter's Settlement or you submitted a claim **after** _____, 2013, a Proof of Claim is being mailed to you with this Notice. You may also get a Proof of Claim on the Internet at the websites for the Claims Administrator: www.[__].com, or Class Counsel: www.labaton.com. Please read the instructions carefully, fill out the Proof of Claim, include all the documents the form asks for, sign it, and mail it to the Claims Administrator by First-Class Mail, postmarked on or before _____, 2013. The Claims Administrator needs all of the

- 10 -

information requested in the Proof of Claim in order to determine what you may be entitled to.

| 11. | When would I get my payment? |
|-----|------------------------------|

The Court will hold a Settlement Hearing on _____, **2013**, to decide whether to approve the Settlement.  Even if the Court approves the Settlement, there may still be appeals, which can take time to resolve, perhaps more than a year.  It also takes time for all claims to be processed.  All Proofs of Claim need to be submitted by_____, **2013**.

Once all the claims are processed and calculated, Lead Counsel, without further notice to the Settlement Class, will apply to the Court for an order distributing the Net Settlement Fund to the members of the Settlement Class. Lead Counsel will also ask the Court to approve payment of the Claims Administrator's outstanding fees and expenses incurred in connection with giving notice and administering the Settlement.  Please be patient.

| 12. | What am I giving up to get a payment and by staying in the Settlement Class? |
|-----|------------------------------------------------------------------------------|

Unless you exclude yourself, you will stay in the Settlement Class, which means that upon the "Effective Date" you will release all "Released Claims" (as defined below) against the "Released Defendant Parties" (as defined below).

"Released Claims" means any and all claims, rights, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, including both known and Unknown Claims (as defined below), whether arising under federal, state, common or administrative law, or any other law, that Lead Plaintiff or any other Class Member: (i) have asserted in the Plymouth Action, Mylroie Action, or Consolidated Action; or (ii) could have asserted in any forum, that arise out, are based upon, or relate in any way, directly or indirectly, to the allegations, transactions, facts, events, occurrences, acts, disclosures, statements, representations or omissions or failures to act involved, set forth, or referred to in the complaints filed in the Plymouth Action, Mylroie Action, or Consolidated Action, and that relate in any way, directly or indirectly, to the purchase or acquisition during the Class Period of Carter's publicly traded securities. Released Claims do not include: (i) claims to enforce the Settlement; (ii) claims in the shareholder derivative lawsuit entitled *Alvarado v. Bloom*, No. 2010 cv 186118

- 11 -

(Superior Court of Fulton County, Georgia); and (iii) any governmental or regulatory agency's claims in any criminal or civil action against any of the Released Defendant Parties.

"Unknown Claims" means any and all Released Claims, which the Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Defendant Parties, and any Released Defendant's Claims that PwC does not know exist in its favor at the time of the release of the Released Plaintiff Parties, which if known by it might have affected its decisions with respect to the Settlement. With respect to any and all Released Claims and Released Defendant's Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs and PwC, shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, expressly waived and relinquished any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs, the other Settlement Class Members or PwC may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendant's Claims, but Plaintiffs and PwC shall expressly, fully, finally and forever settle and release, and each other Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendant's Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs and PwC acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendant's Claims was separately bargained for and was a key element of the Settlement.

"Released Defendant Parties" means PwC; each of its current or former partners, principals, employees, agents, attorneys, personal or legal representatives, insurers,

consultants, experts, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, general or limited partners or partnerships, limited liability companies, trustees, estates, administrators, related or affiliated entities; and any entity in which PwC has a controlling interest.

The "Effective Date" will occur when an Order by the Court approving the Settlement becomes final and is not subject to appeal as set out more fully in the Stipulation and Agreement of Settlement with PricewaterhouseCoopers LLP ("Stipulation") on file with the Court.

If you remain a member of the Settlement Class, all of the Court's orders will apply to you and legally bind you.

## E.     EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, but you want to keep any right you may have to sue or continue to sue PwC and the other Released Defendant Parties, on your own, about the Released Claims, then you must take steps to get out. This is called excluding yourself from—sometimes referred to as "opting out" of—the Settlement Class. PwC may withdraw from and terminate the Settlement if putative Settlement Class Members who purchased in excess of a certain amount of Carter's securities purchased during the Class Period exclude themselves from the Settlement Class.

---

**13.     How do I get out of the proposed Settlement?**

---

To exclude yourself from the Settlement Class, you must send a signed letter by mail stating that you "request exclusion from the PwC Settlement Class in *In re Carter's, Inc. Securities Litigation,* No. 1:08-CV-2940-AT (N.D.Ga.)."

Your letter must state the date(s), price(s), and number(s) of shares of all your purchases, acquisitions, and sales of Carter's securities during the Class Period. In addition, be sure to include your name, address, telephone number and your signature. You must mail your exclusion request postmarked no later than _____, **2013**, to:

*In re Carter's, Inc. Securities Litigation* - EXCLUSIONS
c/o _____
Claims Administrator

_____

- 13 -

_____, ___ _____

You cannot exclude yourself by telephone or by email. Your exclusion request must comply with these requirements in order to be valid. If you write to request to be excluded, you will not get any settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue (or continue to sue) PwC and the other Released Defendant Parties in the future.

The time to seek exclusion from the Carter's Settlement has passed. A request for exclusion from the proposed Settlement will not exclude you from the Carter's Settlement.

| 14. | If I do not exclude myself, can I sue PwC and the other Released Defendant Parties for the same thing later? |
| --- | --- |

No. Unless you exclude yourself, you give up any rights to sue PwC and the other Released Defendant Parties for any and all Released Claims. If you have a pending lawsuit, speak to your lawyer in that case immediately. You must exclude yourself from *this* Settlement Class to continue your own lawsuit. Remember, the exclusion deadline is _____, 2013.

| 15. | If I exclude myself, can I get money from the proposed Settlement? |
| --- | --- |

No. If you exclude yourself, do not send in a Proof of Claim to ask for any money. But, you may exercise any right you may have to sue, continue to sue, or be part of a different lawsuit against PwC and the other Released Defendant Parties.

## F.   THE LAWYERS REPRESENTING YOU

| 16. | Do I have a lawyer in this case? |
| --- | --- |

The Court appointed the law firm of Labaton Sucharow LLP to represent all Settlement Class Members. These lawyers are called Lead Counsel. You will not be separately charged for these lawyers. The Court will determine the amount of Lead Counsel's fees and expenses, which will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 17. | How will the lawyers be paid? |
|---|---|

Lead Counsel has not received any payment for its services in pursuing the claims against PwC on behalf of the Settlement Class, nor has it been reimbursed for its litigation expenses. At the Settlement Hearing, or at such other time as the Court may order, Lead Counsel will ask the Court to award it, from the Settlement Fund, attorneys' fees of no more than 30% of the Settlement Fund, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Fund, and to reimburse its litigation expenses (such as the cost of experts) that have been incurred in pursuing the Consolidated Action. The request for reimbursement of expenses will not exceed $___, plus interest on the expenses at the same rate as may be earned by the Settlement Fund.

## G.    OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

| 18. | How do I tell the Court that I do not like the proposed Settlement? |
|---|---|

If you are a Settlement Class Member you can object to the Settlement or any of its terms, the certification of the class, the proposed Plan of Allocation and/or the application by Lead Counsel for an award of fees and expenses. You may write to the Court setting out your objection. You may give reasons why you think the Court should not approve any part or all of the Settlement terms or arrangements. The Court will consider your views if you file a proper objection within the deadline and according to the following procedures.

To object, you must send a signed letter stating that you object to the proposed settlement with PwC in *In re Carter's, Inc. Securities Litigation,* No. 1:08-CV-2940-AT (N.D.Ga.)." Be sure to include your name, address, telephone number, and your signature, identify the date(s), price(s) and number(s) of shares of all purchases, acquisitions and sales of Carter's securities you made during the Class Period, and state the reasons why you object to the Settlement. Your objection must be filed with the Court and postmarked or delivered to all the following on or before _____, 2013:

**COURT:**

- 15 -

Clerk of the Court
United States District Court for the Northern District of Georgia
Richard B. Russell Federal Building and United States Courthouse
75 Spring Street, SW
Atlanta, GA 30303-3309

| **LEAD COUNSEL:** | **PwC'S COUNSEL:** |
|---|---|
| Jonathan Gardner | Elizabeth V. Tanis |
| Labaton Sucharow LLP | Juanita P. Kuhner |
| 140 Broadway | King & Spalding LLP |
| New York, NY 10005 | 1180 Peachtree St., N.E. |
|  | Atlanta, Georgia 30309 |

---

**19.   What is the difference between objecting and seeking exclusion?**

---

Objecting is simply telling the Court that you do not like something about the proposed Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## H.   THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement. You may attend, and you may ask to speak, but you do not have to do so.

---

**20.   When and where will the Court decide whether to approve the proposed Settlement?**

---

The Court will hold a Settlement Hearing at _____ __.m. on _____, **2013**, at the United States District Court for the Northern District of Georgia in the Richard B. Russell Federal Building and United States Courthouse, 75 Spring Street, SW, Atlanta, GA 30303-3309.

At this hearing the Court will consider whether the Settlement is fair, reasonable and adequate. The Court also will consider the proposed Plan of Allocation for the Net Settlement Fund and the application of Lead Counsel for attorneys' fees and reimbursement of expenses. The Court will take into consideration any written objections filed in accordance with the instructions set out in question 18 above.

The Court also may listen to people who have properly indicated, within the deadline identified above, an intention to speak at the Settlement Hearing, but decisions regarding the conduct of the Settlement Hearing will be made by the Court. *See* question 22 for more information about speaking at the Settlement Hearing. After the Settlement Hearing, the Court will decide whether to approve the Settlement, and, if the Settlement is approved, how much attorneys' fees and expenses should be awarded to Lead Counsel. We do not know how long these decisions will take.

You should be aware that the Court may change the date and time of the Settlement Hearing without another notice being sent. If you want to come to the hearing, you should check with Lead Counsel before coming to be sure that the date and/or time has not changed.

| 21. | Do I have to come to the Settlement Hearing? |
|-----|----------------------------------------------|

No. Lead Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval. If you submit an objection, you do not have to come to Court to talk about it. As long as you filed and sent your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

| 22. | May I speak at the Settlement Hearing? |
|-----|----------------------------------------|

If you object to the Settlement, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must include with your objection (*see* question 18 above) a statement stating that it is your "Notice of Intention to Appear in *In re Carter's, Inc. Securities Litigation,* No. 1:08-CV-2940-AT (N.D.Ga.)." Persons who intend to object to the Settlement, the Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses and desire to present evidence at the Settlement Hearing must also include in their written objections the identity of any witness they may call to testify and exhibits they intend to introduce into evidence at the Settlement Hearing. You cannot speak at the Settlement Hearing if you excluded yourself from the Settlement Class or if you have not provided written notice of your intention to speak at the Settlement Hearing in accordance with the procedures described in questions 18 and 20.

- 17 -

## I.     IF YOU DO NOTHING

| **23.    What happens if I do nothing at all?** |
| --- |

If you do nothing, and you did not submit a claim in connection with the earlier Carter's Settlement by _____, 2013, you will get no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against PwC and the other Released Defendant Parties about the Released Claims in this case, ever again.  To share in the Net Settlement Fund you must submit a Proof of Claim (*see* question 10) or have submitted one previously in connection with the Carter's Settlement.  To start, continue or be a part of any other lawsuit against PwC and the other Released Defendant Parties about the Released Claims in this case you must exclude yourself from this Settlement Class (*see* question 13).

## J.     GETTING MORE INFORMATION

| **24.    Are there more details about the proposed settlement?** |
| --- |

This Notice summarizes the proposed Settlement.  More details are in the Stipulation, dated _____ __, 2013.  You may review the Stipulation filed with the Court or documents filed during the case during business hours at the Office of the Clerk of the United States District Court for the Northern District of Georgia, Richard B. Russell Federal Building and United States Courthouse, 75 Spring Street, SW, Atlanta, GA 30303-3309.

You also can call the Claims Administrator toll free at ___-___-___; write to *In re Carter's, Inc. Securities Litigation,* c/o _, Claims Administrator, _____, ____, __, _____; or visit the websites of the Claims Administrator or Lead Counsel at **www.____ and www.labaton.com**, where you can find answers to common questions about the Settlement, download copies of the Stipulation or Proof of Claim, and locate other information to help you determine whether you are a Settlement Class Member and whether you are eligible for a payment.

**Please Do Not Call The Court With Questions About The Settlement**

- 18 -

## K.   PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG SETTLEMENT CLASS MEMBERS

| 25. | How will my claim be calculated? |
|---|---|

The purpose of the Plan of Allocation is to distribute settlement proceeds equitably to those Class Members who qualify for distributions from the Net Settlement Fund.  The Court may approve the Plan, or modify it without additional notice to the Class.  Any order modifying the Plan will be posted on the settlement website at: _____.

The Net Settlement Fund will be the gross settlement of $3.3 million reduced by fees and expenses, reduced by taxes, and increased by interest earned on the settlement amount.  The Net Settlement Fund will be distributed among those Class Members who submit timely and valid Proofs of Claim to the Claims Administrator, which are accepted for payment by the Court ("Authorized Claimants").  No distribution of funds among such Authorized Claimants will occur until (1) the Court has approved the settlement and a plan of allocation, (2) the time has expired for any petition for rehearing or appeal of the Court's order(s) approving the settlement and a plan of allocation; and (3) the Court has approved the Claims Administrator's determinations of eligible claims.

Investors in two categories of securities of Carter's - common stock and options on common stock - may be eligible to receive funds in the distribution.  Of the gross settlement of $3.3 million, the gross amount of $3,267,000 (before fees, expenses, taxes, and interest) has been allocated for claims on transactions in Carter's common stock, and the gross amount of up to $33,000 (before fees, expenses, taxes, and interest) has been allocated for claims on transactions in Carter's call and put options, reflecting estimated relative losses.

One requirement for eligibility to share in the distribution of the Net Settlement Fund is that Settlement Class Members must have purchased Carter's ("CRI") common stock, or purchased a call option on CRI common stock, or sold a put option on CRI common stock, in the "Eligibility Period" from March 16, 2005 through November 9, 2009 inclusive.

Federal securities laws allow investors to recover for losses caused by disclosures which corrected previous misleading statements or omissions, but not for losses caused by broad market conditions or by other events unrelated to a securities

- 19 -

fraud. Therefore, a second requirement for eligibility, is that the Settlement Class Member held the CRI security at the time its price declined due to a disclosure of information which corrected an allegedly misleading statement or omission.

Lead Plaintiff and Lead Counsel have identified the following dates of such price declines: October 27, 2009; and November 10, 2009 (the "corrective disclosure dates"). In the case of CRI common stock, the Settlement Class Member must have bought the stock before one of these two corrective disclosure dates, and then held the security until at least one corrective disclosure date. If the stock was purchased and then sold before October 27, 2009; or purchased on or after October 27, 2009 and subsequently sold on or before November 9, 2009, those transactions are excluded from consideration in distribution of settlement proceeds. In the case of CRI call options, a claimant must have purchased the option before one of these two corrective disclosure dates and held it until at least one corrective disclosure date without closing out the position (either by expiration or by selling the option). In the case of CRI put options, a claimant must have sold the option before one of the two corrective disclosure dates, and not closed out the position before a corrective disclosure date (closed out either by expiration or by purchasing the option).

Federal law constrains price inflation under the 90-day-lookback provision of the Public Securities Litigation Reform Act of 1995 ("PSLRA"). In calculating Recognized Loss on the purchase of a share of CRI stock, Recognized Loss may not the exceed purchase price minus the 90-day-lookback mean price of $24.57.

After a Proof of Claim with adequate documentation is submitted to the Claims Administrator, a "Recognized Loss" will be calculated for each purchase of CRI stock or call option or sale of put option in the Eligibility Period, and for a claimant's total overall transactions in a particular category of security in the Eligibility Period. The Recognized Loss is not intended to be an estimate of the amount which might have been recovered after trial, or an estimate of the amount to be paid an Authorized Claimant from the Net Settlement Fund. The method for calculating Recognized Loss simply provides a basis for allocating the Net Settlement Fund proportionately among Authorized Claimants.

As described in the Second Amended and Consolidated Class Action Complaint, the alleged "Accommodations Fraud" extended from and included the beginning of the Class Period on March 16, 2005, through November 9, 2009. Following is a brief description of the announcements on the corrective disclosure dates that allegedly revealed the truth and dissipated the alleged Accommodations Fraud, as determined by Lead Plaintiff and Lead Counsel:

1. **October 27, 2009**: before market open on October 27, 2009, CRI announced it would delay release of third-quarter earnings to complete a review of margin support given wholesale customers.

2. **November 10, 2009**: after market close on November 9, 2009, CRI announced it would restate its financials for fiscal 2004-2008 and the first two quarters of fiscal 2009.

## Recognized Loss on CRI Common Stock

If a claimant had a market gain from overall transactions in CRI common stock in the Eligibility Period March 16, 2005 through November 9, 2009, the value of his/her/its claim will be zero. If a claimant suffered an overall market loss on overall transactions in CRI common stock during the Eligibility Period, and that market loss was less than the sum of his/her/its total Recognized Losses on common stock calculated as described in this Plan, that claimant's Recognized Losses on common stock will be limited to the amount of the actual market loss. If a share was purchased on or after March 16, 2005, and held until at least November 10, 2009 (the last corrective disclosure date), market gain or loss on that share purchase will be the difference between purchase price and the PSLRA 90-day-lookback mean price of $24.57. If a share was purchased on or after March 16, 2005, and sold on or before November 9, 2009, market gain or loss on that share purchase will be the difference between purchase price and sale price.

Lead Plaintiff's damages expert has calculated the price decline net of market and industry effects for each of the two corrective disclosure dates. The net price declines are used to measure alleged inflation in stock price at each purchase and sale date, as described below.

The formulas for calculating Recognized Loss for purchases, or purchases followed by sales, of CRI common stock during the Eligibility Period are:

1. For a share purchased on or after March 16, 2005, and held until at least November 10, 2009, Recognized Loss will be the lesser of: (a) the appropriate value from Table A (below) for that purchase date; or (b) purchase price minus $24.57. If purchase price minus $24.57 is less than zero, the Recognized Loss is zero.

2. For a share purchased on or after March 16, 2005, and sold on or before November 9, 2009, Recognized Loss will be the

> lesser of: (a) the appropriate value from Table A (below) for that purchase date and sale date; or (b) purchase price minus $24.57. If purchase price minus $24.57 is less than zero, the Recognized Loss is zero.

To match purchases and sales within the Eligibility Period, the Claims Administrator will apply a first-in, first-out ("FIFO") rule to holdings of CRI stock on March 15, 2005 (the day before the beginning of the Eligibility Period), and to purchases and sales of CRI stock in the Eligibility Period. For example, FIFO will match the first shares of CRI stock sold against any shares held as of March 15, 2005, and then against purchases in the Eligibility Period in chronological order, beginning with the earliest purchases in the Eligibility Period. Sales matched to CRI common stock held as of March 15, 2005, will be excluded from calculation of Recognized Loss and market gain or loss.

No Recognized Loss will be calculated for any purchase of stock to cover a short sale.

If each Authorized Claimant's Recognized Loss on CRI common stock related to the disclosure dates can be paid in full, and funds remain in that portion of the Net Settlement Fund allocated to common stock, the remaining amount in that portion of the Net Settlement Fund allocated to common stock will be proportionally redistributed among Authorized Claimants with Recognized Losses on CRI options.

**TABLE A**

| SHARE BOUGHT | And SOLD 3/16/05 - 10/26/09 | And SOLD 10/27/09 - 11/9/09 | And HELD to 11/10/09 or later |
|---|---|---|---|
| | | | |
| 3/16/2005 - 10/26/09 | $0.00 | $6.13 | $8.09 |
| 10/27/09 - 11/9/09 | NA | $0.00 | $1.96 |
| 11/10/09 or later | NA | NA | $0.00 |
| | | | |

## Recognized Loss on Purchase of CRI Call Options and Sale of CRI Put Options

A Recognized Loss on a transaction in call or put options will be calculated on an out-of-pocket basis, with the exception that options exercised or assigned during

the Class Period will be treated as CRI common stock purchased on the exercise date.

**Recognized Loss on Call Options Purchased**: a claimant must have purchased the call option before at least one of the two corrective disclosure dates and held it at least until a corrective disclosure date without closing out the position (either by expiration of the contract or by selling the contract).

If the call option was sold on or before November 9, 2009, and was not held to expiration, the Recognized Loss will be the purchase price minus the sale price. If the call option expired on or before November 9, 2009, the Recognized Loss will be the purchase price minus the value of the call option on the date of expiration. The value of the call option on the date of expiration will be the stock price at date of expiration, minus the strike price, but not less than zero.

If the call option was held unexpired at least through November 9, 2009, the Recognized Loss will be the purchase price minus the historical closing price of the call option on November 10, 2009.   Purchases and subsequent sales of the same call options will be matched using FIFO, so that sales will be matched first against call options held on March 15, 2005, and then against the same call options in chronological order of purchase during the Eligibility Period.  Sales matched to call options held at the beginning of the Eligibility Period will be excluded from the calculations of Recognized Loss and market gain or loss.

**Recognized Loss on Put Options Sold**: a claimant must have sold the option contract before at least one of the two corrective disclosure dates and not closed out the position before a corrective disclosure date (closed out either by expiration of the contract or by buying back the contract).

If the put option was repurchased on or before November 9, 2009, the Recognized Loss will be the repurchase price minus the sale price.  If the put option expired on or before November 9, 2009, and the position was not closed out prior to expiration, the Recognized Loss will be the sale price minus the value of the put option on the date of expiration.  The value of the put option on the date of expiration will be the strike price minus the stock price at date of expiration, but not less than zero.

If the put option was held unexpired at least through November 9, 2009, the Recognized Loss will be the sale price minus the historical closing price of the put option on November 10, 2009. Sales and subsequent repurchases of the same put option will be matched using FIFO, so that repurchases will be matched first

- 23 -

against the same put option sold on or before March 15, 2005 and having an open position, and then against the same put option in chronological order of sale during the Eligibility Period. Repurchases matched to put options sold before the beginning of the Eligibility Period will be excluded from the calculations of Recognized Loss and market gain or loss.

## Additional Provisions Relating to Options

If a claimant had an overall market gain from overall transactions in options on CRI common stock in the Class Period March 16, 2005 through November 10, 2009, the value of his/her/its claim will be zero. If a claimant suffered an overall market loss on overall transactions in options during the Class Period, and that market loss was less than the sum of his/her/its total Recognized Losses on options calculated as described in this Plan, that claimant's Recognized Losses on options will be limited to the amount of the actual market loss on options.

Market gain or loss on an option will be calculated on an out-of-pocket basis excluding the requirement that the option be purchased or sold before a corrective disclosure date and the position held open until at least the second corrective disclosure date.

If each Authorized Claimant's Recognized Loss on CRI options can be paid in full, and funds remain in that portion of the Net Settlement Fund allocated to options, the remaining amount in that portion of the Net Settlement Fund allocated to options will be proportionally redistributed among Authorized Claimants with Recognized Losses on CRI common stock.

## Other Provisions of the Plan of Allocation

Recognized Loss is zero on purchases of any shares of CRI common stock which were not publicly registered or were restricted from trading.

Purchases and sales of CRI stock and options will be considered to have occurred on the "contract" or "trade" date, as opposed to the "settlement" or "payment" date. The amount paid or received for such securities will exclude commissions, taxes, and fees.

Recognized Loss will be calculated only on purchases of CRI stock or options. No Recognized Loss will be calculated on receipt of such securities by gift, grant, inheritance, or operation of law.

Payment under the Plan of Allocation approved by the Court will be conclusive for all Authorized Claimants. Claimants whose claims are determined to have a value of zero will nevertheless be bound by the Settlement. No person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, arising from distributions made substantially in accordance with the Plan of Allocation or further orders of the Court. Lead Plaintiff, PwC, their respective counsel, Lead Plaintiff's consulting damages expert, the Claims Administrator and all other Released Parties shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund consistent with the Plan of Allocation, or the determination, administration, calculation, or payment of any Proof of Claim, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

Each Authorized Claimant will recover his/her/its *pro rata* share of the Net Settlement Fund allocated to each category of security (*i.e.* common stock and options) based on his/her/its Recognized Loss on each category of security. To the extent there are sufficient funds in the Net Settlement Fund allocated to each security, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Loss on the respective category of security. If, however, the amount in the Net Settlement Fund for each security is not sufficient to permit payment of the total of all Recognized Losses within that category of security, then each Authorized Claimant will be paid the percentage of the Net Settlement Fund for that security that each Authorized Claimant's recognized claim bears to the total of the claims of all Authorized Claimants ("*pro rata* share") for that category of security. If the Authorized Claimant's total of *pro rata* claims for both common stock and options is less than $10.00, it will be removed from the calculation and will not be paid given the administrative expenses of processing payments.

Distributions to Authorized Claimants will be made after all claims have been processed and after the Court has approved the Claims Administrator's determinations. After an initial distribution of the Net Settlement Fund, if Lead Counsel in consultation with the Claims Administrator determines that redistribution(s) is cost-effective, the Claims Administrator will redistribute any funds remaining in the Net Settlement Fund to Authorized Claimants who have cashed their initial distribution checks, after payment from the Net Settlement Fund of any unpaid taxes, fees, or expenses incurred in administering the fund including in making distributions. If redistribution of funds remaining in the Net Settlement Fund is determined not to be cost-effective, the balance remaining in the Net Settlement Fund will be contributed to a nonsectarian nonprofit

organization(s) serving the public interest, designated by Lead Plaintiff and approved by the Court.

Each claimant is deemed to have submitted to the jurisdiction of the United States District Court for the Northern District of Georgia with respect to his/her/its Proof of Claim.

Dated: _____, 2013

> BY ORDER OF THE COURT
> UNITED STATES DISTRICT COURT
> NORTHERN DISTRICT OF GEORGIA