**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| In re ) | |
| CARTER'S, INC. ) | Civil Action No. 1:08-CV-2940-AT |
| SECURITIES LITIGATION ) | |
| ) | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**<u>SETTLEMENT AND PLAN OF ALLOCATION</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ................................................................. 3

OVERVIEW OF THE CLAIMS AGAINST PWC ....................................... 4

ARGUMENT ........................................................................................... 6

I.    THE PwC SETTLEMENT MERITS APPROVAL BY THE COURT ......... 6

      A.    The Standards for Evaluation of Class Action Settlements ................. 6

      B.    The PwC Settlement Is the Product of Good Faith, Arm's-
            Length Negotiations ................................................................. 8

      C.    The *Bennett* Factors Support Approval of the PwC Settlement ........ 10

            1.    The Significant Obstacles to Success at Trial Support
                  Approval of the PwC Settlement .............................................. 10

            2.    The Range of Reasonableness Supports Approval of the
                  Settlement .......................................................................... 14

            3.    The Complexity, Expense and Likely Duration of
                  Continued Litigation Support Approval of the PwC
                  Settlement .......................................................................... 16

            4.    The Reaction of Settlement Class Members to Date
                  Supports Approval of the PwC Settlement ................................ 17

            5.    The Stage of the Proceedings Supports Approval of the
                  PwC Settlement .................................................................... 18

      D.    The Recommendations of Experienced Counsel and Court-
            Appointed Institutional Lead Plaintiff Heavily Favor Approval
            of the PwC Settlement ............................................................ 20

II.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS .................... 21

III.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ...... 21

CONCLUSION ...................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re Bear Stearns Cos., Inc. Sec., Derivative & "ERISA" Litig.*,
No. 08 MDL 1963, 2012 WL 5465381 (S.D.N.Y. Nov. 9, 2012)......................9

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ................................................................ *passim*

*Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir. 1981) ..........................................................................7

*Cannup v. Sheldon*,
No. 2:04–cv–260–FTM–99DNF,
2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) ...................................................8

*In re Chicken Antitrust Litig. Am. Poultry,*
669 F.2d 228 (5th Cir. 1982) ............................................................................21

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ......................................................................18, 19

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ................................................................7, 19, 20

*In re CP Ships Ltd. Sec. Litig.*,
578 F.3d 1306 (11th Cir. 2009) ..........................................................................7

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................9

*Francisco v. Numismatic Guar. Corp.*,
No. 06-61677, 2008 WL 649124 (S.D. Fla., Jan. 31, 2008) ............................18

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) ........................................................................11

*Garst v. Franklin Life Ins. Co.*,
  No. 97-C-0074, 1999 U.S. Dist. LEXIS 22666
  (N.D. Ala. June 25, 1999)....................................................................14, 17

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................20

*In re HealthSouth Corp. Sec. Litig.*,
  572 F.3d 854 (11th Cir. 2009) .......................................................................7

*Hillis v. Equifax Consumer Services, Inc.*,
  No. 104-CV-3400-TCB, 2007 WL 1953464 (N.D. Ga. June 12, 2007) .............6

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ............................................................7, 9, 14

*In re Jiangbo Pharm., Inc., Sec. Litig.*,
  884 F. Supp. 2d 1243 (S.D. Fla. 2012) ..........................................................11

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) ................................................................6

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ...................................................................15

*In re Motorsports Merch. Antitrust Litig.*,
  112 F.Supp.2d 1329 (N.D.Ga. 2000)..............................................................17

*Pub. Emps. Ret. Ass'n of Colo. v. Deloitte & Touche LLP*,
  No. 07-1704, 2009 WL 19134 (4th Cir. Jan. 5, 2009)....................................12

*Ressler v. Jacobson*,
  822 F. Supp. 1551, 1556 (M.D. Fla. 1992) ...................................................17

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ........................................................10, 15, 20

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001)....................................................14, 20

*In re Sunterra Corp. Sec. Litig.*,
   199 F. Supp. 2d 1308 (M.D. Fla. 2002)................................................11

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) .......................................................6, 7

*Zuckerman v. Smart Choice Auto. Group, Inc.*,
   No. 99-237, 2001 WL 686879 (M.D. Fla. May 3, 2001) ...................................13

## STATUTES

Fed. R. Civ. P. 23(a) and (b)(3) ..............................................................12

15 U.S.C. §78u-4(f)(2)(B)(i)................................................................12, 13

## OTHER AUTHORITIES

William B. Rubenstein, Alba Conte and Herbert B. Newberg,
   4 *Newberg on Class Actions* § 11:51 (4th ed. 2010) ...........................................8

Pursuant to Rules 23(a), (b)(3), and (e) of the Federal Rules of Civil Procedure, the Court-appointed Lead Plaintiff, Plymouth County Retirement System ("Lead Plaintiff" or "Plymouth"),[1] on behalf of itself and the Settlement Class,[2] respectfully submits this memorandum of law in support of its motion for final approval of the proposed $3.3 million settlement with PricewaterhouseCoopers LLP ("PwC") (the "PwC Settlement" or "Settlement") as set forth in the Stipulation.  The PwC Settlement is in addition to the prior $20 million settlement with Carter's and the individual defendants ("Carter's Settlement") previously approved by the Court (ECF No. 130).

Lead Plaintiff hereby respectfully requests (i) final approval of the PwC Settlement as fair, adequate, and reasonable by entry of the proposed Final Order and Judgment (the "Judgment"), which was negotiated by the Settling Parties as an

---

[1] All capitalized terms used herein, unless otherwise defined, have the same meaning as that set forth in the Stipulation and Agreement of Settlement with PricewaterhouseCoopers LLP (the "Stipulation"), dated April 24, 2013 (ECF No. 156-3).

[2] In its Preliminary Approval Order Providing for Notice and Hearing in Connection with Proposed Class Action Settlement with PricewaterhouseCoopers LLP (the "Preliminary Approval Order") (ECF No. 159), entered May 21, 2013, the Court certified for settlement purposes only a Settlement Class of all Persons who purchased the publicly traded securities of the Company during the period from March 16, 2005 through November 10, 2009, inclusive, and were allegedly damaged thereby, other than persons who are excluded from the Settlement Class by definition or who timely and validly seek exclusion from the Settlement Class.

Exhibit to the Stipulation; (ii) a finding that notice to the Settlement Class satisfied due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (iii) final certification of the Settlement Class; (iv) appointment of Lead Plaintiff as Class Representative, Labaton Sucharow LLP ("Labaton Sucharow") as Class Counsel, and Harris Penn Lowry, LLP ("Harris Penn") as Liaison Counsel; and (v) approval of the proposed Plan of Allocation for distributing the Net Settlement Fund to eligible claimants.

This motion is supported by the accompanying Declaration of Jonathan Gardner in Support of Lead Plaintiff's Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses (the "Gardner Declaration" or "Gardner Decl."), which is incorporated by reference, as well as the Declaration of William R. Farmer, Executive Director of Plymouth County Retirement System, in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Ex. 1.[3]

---

[3] All exhibits referenced herein are annexed to the Gardner Declaration.  For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex. ___ - ___."  The first numerical reference is to the designation

## PRELIMINARY STATEMENT

The PwC Settlement provides an immediate and substantial recovery of $3.3 million to the Settlement Class, which faced the significant risk of a much smaller recovery, or no recovery at all, were the Consolidated Action to continue against PwC.  In consideration for this payment, the PwC Settlement will finally resolve all Released Claims against PwC and the Released Defendant Parties, and end the Consolidated Action.

The PwC Settlement was reached only after extensive investigative efforts and motion practice and is the result of arm's-length negotiations by well-informed counsel with the active assistance of former United States District Court Judge Layn R. Phillips ("Judge Phillips"), a highly experienced mediator.  Lead Counsel has significant experience in securities class action litigation, and has negotiated numerous substantial class action settlements throughout the country.  It is Lead Counsel's informed opinion that the PwC Settlement is an excellent result in light of the uncertainty and further substantial expense of pursuing the claims against PwC through trial and the appeals that may have followed.

Moreover, Plymouth, a sophisticated institutional investor, has closely monitored this litigation from the outset, was involved in negotiating the

of the entire exhibit attached to the Gardner Declaration and the second reference is to the exhibit designation within the exhibit itself.

Settlement, and recommends that the PwC Settlement be approved.  *See* Ex. 1 ¶¶1-5, 7.  The PwC Settlement is fair, reasonable, and adequate, and is in the best interests of the Settlement Class.

## OVERVIEW OF THE CLAIMS AGAINST PWC

To avoid undue length and repetition, Lead Plaintiff respectfully refers the Court to the Gardner Declaration for a detailed description of, *inter alia*, the history of the Consolidated Action; the nature of the claims asserted against PwC; the investigation undertaken; the negotiations leading to settlement; the value of the PwC Settlement compared to the risks and uncertainties of continued litigation; and a description of the services Lead Counsel provided.

The PwC Settlement was reached at a time when Lead Plaintiff and Lead Counsel had a thorough understanding of the facts and challenges posed by the claims and defenses, and the factors that would impact a future recovery from PwC.  Briefly, the proceedings to date have included:

- Extensive investigation, including review and analysis of: (1) filings with the U.S. Securities and Exchange Commission ("SEC"); (2) publicly available information (including press releases, public statements, analyst reports, and advisories and media reports about the Company); (3) pleadings and disclosures in the SEC's action against Joseph M. Elles ("Elles") (Carter's Executive Vice President of Sales during the Class Period), the criminal proceeding by the United States Department of Justice ("DOJ") against Elles, the SEC's action against Joseph Pacifico ("Pacifico") (Carter's President until December 21,

2009), and the SEC's action against Michael H. Johnson (a former divisional merchandise manager at one of Carter's largest customers); and (4) the applicable law and accounting rules governing the claims. Gardner Decl. ¶¶53-57.

- Contentious motion practice including: (1) investigating and drafting the initial complaint, First Amended Complaint, and the Second Amended Complaint; (2) researching and responding to PwC's motion to dismiss the remaining claims in the Second Amended Complaint; and (3) researching and responding to PwC's motion for reconsideration of the Court's Order denying PwC's motion to dismiss. *Id*. ¶¶42-49.

- Identifying more than 168 potential witnesses, contacting 114, and interviewing approximately 68 third parties with knowledge of the relevant issues to the Consolidated Action. *Id*. ¶¶14, 55.

- Consulting with an experienced accounting expert regarding the substantive accounting issues in the alleged accommodations fraud, and further exploring the factual and legal issues regarding loss causation and class-wide damages by consulting with a damages expert. *Id*. ¶14, 57.

- Performing confirmatory discovery which included the review of PwC's workpapers produced to the SEC during its investigation of the Company. *Id*. ¶14, 56

- Extended settlement negotiations including several discussions between counsel and an in-person, full-day mediation session before former United States District Court Judge Layn R. Phillips, a highly regarded and experienced mediator. *Id*. ¶¶15, 58-60.

In light of the excellent result and the opportunity for an immediate cash recovery for thousands of Settlement Class Members, Lead Plaintiff respectfully

requests that the Court grant final approval of the PwC Settlement, approve the proposed Plan of Allocation, and finally certify the proposed Settlement Class.

## ARGUMENT

## I.   THE PwC SETTLEMENT MERITS APPROVAL BY THE COURT

### A.   The Standards for Evaluation of Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure mandates that a class action settlement be approved by a court.  The criteria for granting final approval to a class action settlement are that the settlement must be "fair, adequate and reasonable [and] . . . not the product of collusion between the parties and/or their attorneys."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986-87 (11th Cir. 1984). Public and judicial policy strongly favor pretrial settlement of litigation; particularly in class action litigation.  *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)  ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Hillis v. Equifax Consumer Services, Inc.,* No. 104-CV-3400-TCB, 2007 WL 1953464, at *9 (N.D. Ga. June 12, 2007) ("When exercising its discretion, the court is mindful of the public and judicial policies that strongly favor the settlement of class action lawsuits.").  Public policy also recognizes that class actions alleging securities violations are particularly well-suited for settlement. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667

(M.D. Ala. 1988) (due to "the notable unpredictability of result" and the length of such litigation, "securities fraud class actions readily lend themselves to settlement").

*Bennett* held that a court evaluating a class action settlement should consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d at 986; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009).   Approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court."  *In re U. S. Oil & Gas Litig.*, 967 F.2d at 493; *accord In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 859 (11th Cir. 2009).  Additionally, "a trial court is 'entitled to rely on the judgment of experienced counsel for the parties' in evaluating settlement." *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 689 (N.D. Ga. 2001), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[4]  Indeed, in reviewing a

---

[4]  Opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (*en banc*).

class action settlement under Rule 23(e), "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. Here, the PwC Settlement satisfies the criteria for approval articulated in *Bennett* and should be finally approved.

**B.      The PwC Settlement Is the Product of**
**        <u>Good Faith, Arm's-Length Negotiations</u>**

A threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties. *See Cannup v. Sheldon*, No. 2:04–cv–260–FTM–99DNF, 2009 WL 4042928, at *9 (M.D. Fla. Nov. 23, 2009) (citing *Bennett*, 737 F.2d at 987 n.9) ("In determining . . . fraud or collusion, the Court examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior . . . on the part of class counsel."). Courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." William B. Rubenstein, Alba Conte and Herbert B. Newberg, 4 *Newberg on Class Actions* § 11:51 (4th ed. 2010).

Here, the PwC Settlement satisfies the threshold consideration. Lead Plaintiff negotiated the PwC Settlement on a well-informed basis and with a thorough understanding of the merits and values of the Settling Parties' claims and

defenses.    The PwC Settlement is the product of informed arm's-length negotiations before Judge Phillips, a nationally recognized and experienced mediator.    Gardner Decl. ¶¶15, 51, 58, 60.    The February 28, 2013 full-day mediation session was preceded by the exchange of comprehensive mediation statements on merits and damages issues. *Id*. ¶51.

The nature of the settlement discussions and Judge Phillips's involvement strongly support a finding that the PwC Settlement is not the product of collusion. *See Ingram*, 200 F.R.D. at 693 (parties' use of an experienced and well-respected mediator supported the court's finding that the settlement was fair and not the product of collusion); *see also In re Bear Stearns Cos., Inc. Sec., Derivative & "ERISA" Litig*., No. 08 MDL 1963, 2012 WL 5465381, at *3 (S.D.N.Y. Nov. 9, 2012) ("The parties. . . engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well regarded mediator of complex securities cases."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig*., 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions, who acted as Special Master in the settlement negotiations").

**C.**   **The *Bennett* Factors Support Approval of the PwC Settlement**

    **1.**   **The Significant Obstacles to Success at**
           **Trial Support Approval of the PwC Settlement**

The first *Bennett* factor is "the likelihood of success at trial."  *Bennett*, 737 F.2d at 986.  In assessing plaintiffs' likelihood of success at trial for purposes of reviewing a settlement, the Court should not try the merits of the case but should only make a limited inquiry as to "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005).

Although Lead Plaintiff strongly believes that its claims against PwC are meritorious, there were significant obstacles to success at trial.  For example, (i) the Court may have found, either upon PwC's motion for reconsideration or a motion for summary judgment, that Lead Plaintiff failed to establish PwC's scienter, well-recognized as a difficult and uncertain element in any securities case and especially so in a case against an outside auditor; and (ii) even if Lead Plaintiff prevailed on liability, PwC would likely challenge loss causation and the calculation of damages.

    **(a)**   **Risks Concerning Scienter**

PwC would continue to maintain that Lead Plaintiff failed to establish the requisite scienter with respect to the accommodations fraud.  In its motions to

dismiss and for reconsideration, PwC argued that Lead Plaintiff failed to plead a strong inference of scienter with respect to PwC and would likely argue at summary judgment and at trial that Lead Plaintiff could not prove PwC's scienter.

For example, PwC would continue to assert, *inter alia*, that Elles and Pacifico hid the alleged improper accommodations fraud from PwC as well as Carter's internal accounting department by creating false documentation regarding accommodations, and that independent investigations by the DOJ and the SEC have not contradicted PwC's defense.  Gardner Decl. ¶¶11, 70.  PwC would also continue to argue that it had no motive to assist Carter's in manipulating its accommodations practices, and that PwC remains Carter's outside auditor even after Carter's Audit Committee fully investigated the accommodations fraud and restated its financial statements for fiscal years 2004 through 2008.  *Id*. ¶70. Indeed, the difficulty of establishing scienter is particularly acute with respect to outside auditors.  *See, e.g.*, *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (affirming dismissal of securities fraud claims against auditor for failure to plead scienter); *In re Jiangbo Pharm., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1268 (S.D. Fla. 2012) (dismissing securities fraud claims against external auditor for failure to plead scienter); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1335–37 (M.D. Fla. 2002) (finding plaintiffs failed to establish auditors

acted with scienter); *see also Pub. Emps. Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, No. 07-1704, 2009 WL 19134 (4th Cir. Jan. 5, 2009) (affirming dismissal of securities fraud claims against outside auditor on element of scienter).

### (b)   Risks Concerning Damages

Lead Plaintiff faced risks not only in establishing PwC's scienter, but also with respect to the calculation and proof of damages, which PwC would vigorously contest at summary judgment, in pretrial *Daubert* motions, and at trial.

For example, PwC would likely assert at summary judgment and trial that Lead Plaintiff could not demonstrate a corrective disclosure as to PwC and that because Carter's stock price was higher at the time of the first partial disclosure than it had been for the majority of the Class Period and "bounced back" after each subsequent disclosure, damages would be severely limited by the PSLRA's 90-day "bounce-back" cap on damages, 15 U.S.C. § 78u-4(e).  *See* Gardner Decl. ¶73.

PwC would also contend that, under the PSLRA's proportionate liability provision, absent a showing that it "knowingly committed a violation of the securities laws",[5] PwC is "liable *solely* for the proportion of the judgment that corresponds to [its] percentage of responsibility…"  15 U.S.C. §78u-4(f)(2)(B)(i) (emphasis added).  The proportionate share of fault is measured for "each covered

---

[5]   Lead Plaintiff's theory of liability against PwC is that PwC ignored "red flags," not that PwC knowingly committed securities fraud.

person and each of the other persons claimed by any of the parties to have caused or contributed to the loss . . . including persons who have entered into settlements with the plaintiff." *Id*. §78u-4(f)(3)(A). Moreover, determining the "percentage of responsibility" requires the trier of fact to consider the "nature of the conduct of each covered person" and the "nature and extent of the causal relationship between the conduct of each such person and the damages incurred by the plaintiff." *Id*. §78u-4(f)(3)(C). *See also* Gardner Decl. ¶74.

Therefore, PwC would argue at trial its percentage of responsibility should be significantly diminished under the PSLRA as the jury should apportion the majority (if not all) of fault to others including Elles, Pacifico, Mike Johnson (Kohl's executive alleged to have colluded with Carter's), Mike Casey (Carter's former CFO who then became Carter's CEO), Andy North (Carter's Vice President of Finance), and Carter's itself. *Id*. .

Although Lead Plaintiff believes that it could rebut all of PwC's arguments with expert testimony, survive summary judgment, and prevail at trial, proof of damages would be a heavily disputed matter subject to conflicting expert testimony, nor is it possible to predict with any confidence how a jury would resolve the dispute or what percentage of fault a jury would apportion to PwC - Carter's outside auditor. *See, e.g., Zuckerman v. Smart Choice Auto. Group, Inc.*,

No. 99-237, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Ingram*, 200 F.R.D. at 689 (one of the "significant risks" of bringing a class action suit to trial is that it would involve a "battle of experts").

Given these potential obstacles to recovery at trial, the certain recovery of $3.3 million represents an excellent result for the Settlement Class.

### 2.    The Range of Reasonableness Supports Approval of the Settlement

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988) (same), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("the second and third considerations of the *Bennett* test are easily combined").

When compared to the risks of continued litigation against an outside auditor such as PwC, the proposed $3.3 million recovery is favorable to the Settlement Class and falls within the range of reasonableness when viewed with comparable

settlements.    Lead Plaintiff's consulting damages expert estimated that the maximum aggregate damages Lead Plaintiff could have obtained at trial due to the accommodations fraud (the only fraud alleged against PwC), assuming full recovery of the stock drops following the alleged corrective disclosures, was approximately $64.5 million.    Gardner Decl. ¶¶13, 90.    Thus, the $3.3 million Settlement with PwC represents approximately 5% of the total estimated damages amount.    *Id.*[6]    This percentage compares favorably with other court-approved settlements in PSLRA cases in this and other circuits.    *See, e.g., Strube*, 226 F.R.D. at 698 (approving settlement equal to 2% of estimated potential recovery); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving $4.9 million settlement equal to 3% of estimated damages and noting that the "estimated recovery of three percent of the total damages estimated by the plaintiffs, does not meaningfully diverge from the range of reasonableness for settlements of similar-sized securities class actions").

---

[6]   When combined with the $20 million Carter's Settlement, Lead Counsel has recovered approximately 36% of the total estimated damages for claims attributable to the accommodations fraud.   *See id.*

### 3. The Complexity, Expense and Likely Duration of Continued Litigation Support Approval of the PwC Settlement

This Consolidated Action involves not only the complex issues associated with securities class actions generally, but also issues related to proving scienter of an outside auditor, as detailed *supra*. Based on the evidence adduced so far and the complexity of the issues involved, Lead Plaintiff reasonably expected that continued litigation of the Consolidated Action against PwC would involve a great amount of time and additional work with multiple experts.

At the time the PwC Settlement was reached, PwC's motion for reconsideration remained pending. Were the Court to deny PwC's motion, Lead Plaintiff faced lengthy fact and expert discovery, additional motions before the Court (including class certification, summary judgment, and *Daubert* motions), and the significant challenge of convincing a jury that PwC had violated the securities laws, causing Lead Plaintiff's losses. These efforts would require additional large expenditures over an extended period, after which the Settlement Class might obtain a result far less beneficial than the one the PwC Settlement provides. Even if Lead Plaintiff succeeded at trial, Lead Plaintiff would face the inevitable post-judgment appeals that could take years to resolve.

In contrast to the substantial expense and risk of litigating the claims through trial and the extended duration that would result from the trial itself, post-trial motions, and appeals, the PwC Settlement provides a certain immediate payment of $3.3 million.

### 4.     The Reaction of Settlement Class Members to Date Supports Approval of the PwC Settlement

The reaction of class members to a proposed settlement is a significant factor to be considered and the absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("the lack of objections is a further factor weighing in favor of approval of the settlements"); *Garst*, 1999 U.S. Dist. LEXIS 22666, at *71-72 ("small amount of opposition strongly supports approving the Settlement").

To date, the reaction of the Settlement Class to the PwC Settlement has been very positive and supports approval.  The Notice and Proof of Claim has been mailed to more than 115,000 potential members of the Settlement Class.  *See* Ex. 3 ¶¶8, 11-13.  Additionally, potential Settlement Class Members who submitted a claim in the Carter's Settlement by May 21, 2013 were mailed a copy of the Notice and a letter explaining that they did not need to submit a Proof of Claim since the

information previously submitted in the Carter's Settlement will be used to determine eligibility in the PwC Settlement. *Id.* ¶9. 4,012 such Notices and letters were mailed. *Id.* Summary Notice was also published once in *Investor's Business Daily* and over *PR Newswire* on June 19, 2013 (*id.* ¶15) and the Notice and other related documents were published on a dedicated settlement website, www.carterssecuritieslitigation.com, and on the website of Lead Counsel, www.labaton.com. *Id.* ¶¶25-26; Gardner Decl. ¶19.

The Notice informed Settlement Class Members of their right to exclude themselves from the Settlement Class or their right to object to any aspect of the PwC Settlement, the Plan of Allocation, and/or Lead Counsel's application for an award of attorneys' fees and expenses. Ex. 3-A. The deadline for submitting objections and exclusion requests is September 17, 2013. To date, ***no*** objection to the PwC Settlement has been received. Gardner Decl. ¶78. Moreover, only one exclusion request has been received, and it is invalid. *Id.*; Ex. 3 ¶32. Should any objections and/or exclusion requests be received, they will be addressed by Lead Counsel in its reply papers that will be filed on or before October 1, 2013.

### 5. The Stage of the Proceedings Supports Approval of the PwC Settlement

In weighing this *Bennett* factor, a court should focus on whether "[c]lass [c]ounsel had sufficient information to adequately evaluate the merits of the case

and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted. *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla., Jan. 31, 2008). "[F]ormal discovery [is not] a necessary ticket to the bargaining table," *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981), and courts have rejected the notion that such discovery must take place. *See, e.g., Cotton*, 559 F.2d at 1332 (The fact that "very little formal discovery was conducted and that there is no voluminous record in this case . . . does not compel the conclusion that insufficient discovery was conducted.").

Here, the PwC Settlement was reached only after Lead Plaintiff filed a detailed Second Amended Complaint based on its comprehensive investigation and identification of more than 168 potential witnesses, contact with 114, and interviews with approximately 68 individuals with knowledge of the issues presented. The Consolidated Action regarding PwC involved briefing PwC's motion to dismiss; PwC's motion for reconsideration; consultation with an accounting expert regarding the accounting issues related to the alleged accommodations fraud; consultation with damages and loss causation experts; participation in an in-person full-day mediation before an experienced mediator after an exchange of mediation material; and confirmatory discovery of PwC's

workpapers (including consulting with an accounting expert on the same). *See* Gardner Decl. ¶¶14, 42-46, 49-51, 54-56, 58-60.

As a result, Lead Plaintiff and Lead Counsel had a comprehensive understanding of the claims against PwC and sufficient information to make a well informed decision regarding the fairness of the PwC Settlement as each side "was well aware of the other side's position and the merits thereof." *Sunbeam*, 176 F. Supp. 2d at 1332.

### D. The Recommendations of Experienced Counsel and Court-Appointed Institutional Lead Plaintiff Heavily Favor Approval of the PwC Settlement

In determining whether the proposed PwC Settlement is fair, adequate, and reasonable, the Court may rely on the judgment of counsel. *See Cotton*, 559 F.2d at 1330; *accord Perez*, 501 F. Supp. 2d at 1380; *Strube*, 226 F.R.D. at 703. Lead Counsel, one of the nation's preeminent law firms in this area of practice *(see* Ex. 5-C), strongly endorses the PwC Settlement and believes that it represents an excellent recovery on behalf of the Settlement Class.

Moreover, Plymouth, a sophisticated institutional investor, closely supervised this litigation and has endorsed the PwC Settlement as fair, reasonable, and adequate to the Settlement Class. *See* Ex. 1 ¶1-5, 7. The endorsement of a settlement by a PSLRA lead plaintiff that has played an active role in the litigation

provides additional support for the fairness of the settlement.  *See, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

## II.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS

In presenting the PwC Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court preliminarily certify the Settlement Class so that notice of the proposed PwC Settlement could be issued.  In its Preliminary Approval Order, entered on May 21, 2013, this Court did so.  Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in Lead Plaintiff's Memorandum of Law in Support of Its Unopposed Motion for Preliminary Approval of Proposed Class Settlement with PricewaterhouseCoopers LLP (ECF No. 156-1), Lead Plaintiff now requests that the Court grant final certification of the Settlement Class for purposes of carrying out the PwC Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Lead Plaintiff as Class Representative, Lead Counsel as Class Counsel, and Harris Penn as Liaison Counsel.

## III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, adequate and reasonable and is not

the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982).

The Settlement Class received copies of the Plan of Allocation proposed here as part of the notice program pursuant to the Preliminary Approval Order. It is set forth in full on pages 9-12 of the Notice. *See* Ex. 3-A. The Plan of Allocation provides for a distribution of the Net Settlement Fund to members of the Settlement Class with recognized losses who previously submitted a timely claim in connection with the prior Carter's Settlement, or who timely submit a valid claim form now. *See* Gardner Decl. ¶¶80-81. To date, no objections to the Plan of Allocation have been received. *Id*. ¶86.

The objective of a plan of allocation is to provide an equitable basis upon which to distribute a settlement fund among eligible class members. Here, the Plan of Allocation was formulated with the assistance of Lead Plaintiff's consulting damages expert, and was developed with a focus on providing a fair and reasonable allocation based upon the type of security purchased, information that was in the market at the time of a claimant's purchase, statutory methods for calculating damages, and the strengths and weaknesses of the claims. This analysis also included studying the market reaction to the alleged disclosures relating to the accommodations fraud and calculating the amount of artificial

inflation present in Carter's securities throughout the Class Period that was allegedly attributable to the wrongdoing.  Calculation of a Recognized Loss will depend upon several factors, including what type of securities were purchased and when they were purchased or sold.  Gardner Decl. ¶¶81-84; Ex. 3-A at 9-12.

The Plan of Allocation is substantially the same as the Plan of Allocation previously approved by the Court in the Carter's Settlement for distribution to Settlement Class Members injured by the accommodations fraud.  Gardner Decl. ¶85.  The accommodations fraud extended from and included the beginning of the Class Period on March 16, 2005 through November 9, 2009 (the "Eligibility Period").  *Id*. ¶80; Ex. 3-A at 9-10.  To share in the distribution of the Net Settlement Fund, Settlement Class Members must have purchased Carter's common stock, or purchased a call option on Carter's common stock, or sold a put option on Carter's common stock, in the Eligibility Period, and then held the security until after at least one corrective disclosure related to the accommodations fraud.[7]  Gardner Decl. ¶¶80, 84; Ex. 3-A at 9-11.

---

[7]   Upon completion of the administration and processing of claims, Lead Plaintiff will make a single motion for distribution of: (i) the Net Settlement Fund in the PwC Settlement and (ii) the Net Settlement Fund in the Carter's Settlement. *See* Gardner Decl. ¶102; Ex. 3 ¶35.

Accordingly, Lead Plaintiff and Lead Counsel submit that the Plan of Allocation is fair, adequate and reasonable and should be approved by the Court.

## CONCLUSION

Lead Plaintiff respectfully requests that the Court, *inter alia*: (i) finally approve the proposed Settlement as fair, reasonable, and adequate and enter the proposed Judgment; (ii) grant final certification of the Settlement Class, and (iii) enter the proposed Order Approving the Plan of Allocation. Proposed orders will be submitted with Lead Plaintiff's reply papers, after the deadlines for seeking exclusion and objecting have passed.

Dated: August 30, 2013                      Respectfully submitted,

**HARRIS PENN LOWRY, LLP**

By: /s/ David J. Worley
(Ga. Bar No. 776665)
david@hpllegal.com
James M. Evangelista
(Ga. Bar No. 707807)
jim@hpllegal.com
400 Colony Square
1201 Peachtree Street, NE
Suite 900
Atlanta, Georgia 30361
Tel: (404) 961-7650
Fax: (404) 961-7651

*Liaison Counsel for Lead Plaintiff and the Settlement Class*

24

**LABATON SUCHAROW LLP**
Christopher Keller
ckeller@labaton.com
Jonathan Gardner
jgardner@labaton.com
Angelina Nguyen
anguyen@labaton.com
140 Broadway
New York, New York 10005
Tel:  (212) 907-0700
Fax:  (212) 818-0477

*Lead Counsel for Lead Plaintiff*
*Plymouth County Retirement System*
*and the Settlement Class*

**FINKELSTEIN THOMPSON &
LOUGHRAN**
Donald J. Enright
1050 30th Street, NW
Duvall Foundry
Washington , DC 20007
Tel: (202) 337-8000
Fax: (202) 337-8090

*Attorneys for Plaintiff Scott Mylroie*

## <u>CERTIFICATE OF COMPLIANCE</u>
## <u>WITH LOCAL RULE 5.1</u>

Counsel hereby certifies that this document has been prepared with Times New Roman 14 point type, which is one of the font and point selections approved by the court in LR 5.1C.

Dated:  August 30, 2013

<u>/s/ David J. Worley</u>
David J. Worley
